FARMERS UNION COOPERATIVE COMPANY, GUIDE ROCK, NEBRASKA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64668.   Promulgated October 17, 1935.

*A. C. R. Swensen, Esq.*, and *Arthur S. French, C. P. A.*, for the petitioner.

*James H. Yeatman, Esq.*, for the respondent.

### OPINION.

SMITH: This case involves a deficiency in income tax of $1,065.93 for the calendar year 1928 and a penalty of $266.48 for failure to file a return, making a total of $1,332.41 in controversy.

The petitioner claims exemption from income tax on the ground that it is a corporation or association organized and operated on a cooperative basis for the purpose of marketing products of members and producers and purchasing supplies and equipment and turning back the profits or savings to the producers and purchasers after the payment of necessary expenses. The respondent has denied the claim of exemption and imposed a penalty of $266.48 on account of failure of petitioner to file a return. The petitioner alleges that the respondent's action was erroneous.

The petitioner corporation was organized under the laws of the State of Nebraska on May 27, 1915. Article III of its articles of incorporation provides:

The general nature of the business to be transacted by said Corporation shall be buying, storing and selling of grain, hay, seeds and all products of the farm; milling, making, buying, storing, handling and selling mill products, by-products and supplies of all kinds intended for food for animals and persons; breeding, buying, rearing, keeping and marketing or slaughtering for curing and food purposes of all kinds of live stock, its products or by-products, or any process necessarily connected therewith; purchasing, storing, handling and sale of all kinds of coals, lumber and building materials, the alteration, refinement or manufacture of any such material intended for buildings or improvements, buying, storing, handling and selling of all kinds of general merchandise, dry goods, groceries, notions, materials and supplies of all kinds for the household and family use, buying, storing, handling, manufacturing and selling of all kinds of implements, tools and machinery for use on the farm, garden, mill, elevator, or for any purpose connected with the business of this Corporation or its members or patrons; buying, leasing, using and selling of real or personal property for any purpose whatsoever aiding or furthering the purposes and business of this Corporation; and doing or transacting any business,

activity, process or parts of processes, using legal methods and resorting to provisions of the laws or the protection of the courts in furtherance of the legitimate aims of this corporation in transacting such business as outlined above, or it may elect to engage in, in accordance with the laws and statutes of the State of Nebraska, as now in force or shall be hereinafter enacted relating thereto.

On May 15, 1915, the petitioner made a formal declaration, filed with the Secretary of State of the State of Nebraska May 20, 1915, that it was a cooperative corporation and claimed the benefits of the Nebraska laws governing cooperatives.

The amount of the capital stock of the corporation as originally formed was $20,000. The highest amount of indebtedness to which the corporation could subject itself was not to exceed two thirds of the paid-up capital stock. By amendments to its articles of incorporation and to its bylaws prior to 1928 the petitioner's authorized capital stock was increased.

The bylaws of the corporation which were in effect during the year 1928 provided for the payment of an annual dividend of 8 percent on the par value of all the paid-in capital stock of the corporation. Section 5 of article IV of the bylaws provided: "All remaining net profits shall be prorated to stockholders in proportion to the amount of business they have done with the corporation during business year."

The petitioner had capital stock of $19,310 outstanding in 1928. The par value of its capital stock was $10 per share. It had approximately 220 stockholders in 1928. The maximum amount of shares any one stockholder can own is limited to 100 shares or $1,000 par value of stock. At least two stockholders owned as much as $1,000 worth of stock in 1928. A stockholder had only one vote. Membership in the corporation was open to any producer who was willing and offered to pay for a share of stock and pay his dues in the Farmers Union in the State of Nebraska. It was and is the desire of the petitioner to increase the membership in the association, since this would result in an increase in its business. No dividends were paid on the capital stock during 1928. A dividend of 4 percent was paid in the year 1934.

In 1928 the business of the petitioner consisted of running a grain elevator, a feed store, and a general merchandise store. It also shipped livestock and handled machinery repairs through the Farmers Exchange of Omaha. The general merchandise store was operated in competition with two other stores in Guide Rock, Nebraska. The prices charged for merchandise were about the same as those charged by the other two stores mentioned. The store was open to the general public and any one could go there and buy any article of

merchandise that the petitioner had to sell. The grain elevator was operated in competition with another elevator in Guide Rock, privately owned.

In buying grain the petitioner operated as follows: When a farmer brought in a load of wheat to its elevator he inquired as to the price he would be paid therefor. The petitioner's representative then advised him what price the petitioner would give for the wheat. The price was determined by the market price for the grain on the Kansas City, Kansas, or Omaha, Nebraska, grain markets. When the purchase was made the producer was either credited with a stated amount on the books of the petitioner or a check in his favor for the value of the wheat was drawn at that time or at some later date.

The policy of the petitioner was to operate on as close a margin as possible, both with respect to marketing grain and selling merchandise. No distinction was made in this respect between business done with stockholders and with nonstockholders. The petitioner had a net profit of $11,882.76 in 1928. It did not make as much profit in the years immediately preceding 1928 as it did in that year, although 1918 was a big year. The profits of the petitioner from the time it was organized up to and including 1928 were not paid back either to the stockholders or the nonstockholders, but were kept in the business, although in 1918 some shares were issued against the profits made in that year. The earnings were also used to liquidate the indebtedness of the corporation. No patronage or other dividends except as above indicated were ever paid to stockholders or nonstockholders from the time the corporation was organized up to and including 1928. The only way that patrons of the corporation could participate in the profits of the business was by purchasing shares of stock in the corporation, after which they could participate only in such profits as accrued subsequent to the date they became shareholders. The petitioner has never set up on its books any credits or accounts payable in favor of nonstockholders representing the profits made on business done with them. No segregation is made on the petitioner's books as between stockholder and nonstockholder business and there is no way of determining from the records of the corporation the business done with nonstockholders for the year 1928 and also no way of making available to the nonstockholders any profits made on their business in 1928.

In 1928 the petitioner did more business with stockholders than it did with nonstockholders. About 30 percent of the elevator department business and 40 percent of the general merchandise store business was done with nonstockholders. But less than 15 percent of its total business was done with persons who were neither stockholders nor producers.

Section 103 of the Revenue Act of 1928 provides in part as follows:

The following organizations shall be exempt from taxation under this title—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(12) Farmers', fruit growers', or like associations organized- and operated on a cooperative basis (a) for the purpose of marketing the products of members or other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them, or (b) for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses. Exemption shall not be denied any such association because it has capital stock, if the dividend rate of such stock is fixed at not to exceed the legal rate of interest in the State of incorporation or 8 per centum per annum, whichever is greater, on the value of the consideration for which the stock was issued, and if substantially all such stock (other than nonvoting preferred stock, the owners of which are not entitled or permitted to participate, directly or indirectly, in the profits of the association, upon dissolution or otherwise, beyond the fixed dividends) is owned by producers who market their products or purchase their supplies and equipment through the association; nor shall exemption be denied any such association because there is accumulated and maintained by it a reserve required by State law or a reasonable reserve for any necessary purpose. Such an association may market the products of nonmembers in an amount the value of which does not exceed the value of the products marketed for members, and may purchase supplies and equipment for nonmembers in an amount the value of which does not exceed the value of the supplies and equipment purchased for members, provided the value of the purchases made for persons who are neither members nor producers does not exceed 15 per centum of the value of all its purchases.

It is elementary that if the petitioner may successfully claim that it is exempt from income tax under the above quoted provision of law it must be because it fills all of the requirements of the statute for exemption from tax. *Register* v. *Commissioner*, 69 Fed. (2d) 607, citing *Producers' Creamery Co.* v. *United States*, 55 Fed. (2d) 104; *Bank of Commerce* v. *State of Tennessee*, 161 U. S. 134; *Heiner* v. *Colonial Trust Co.*, 275 U. S. 232. Exemptions from taxation are not favored and in construing statutes granting such exemptions nothing is to be taken by inference or implication. *Riverdale Co-operative Creamery Association* v. *Commissioner*, 48 Fed. (2d) 711.

The respondent contends that the petitioner is not exempt from income tax as a farmers' cooperative association for the following reasons:

1. It is neither organized nor operated for the purpose of marketing the products of members or other producers and turning back to them the proceeds of sales less necessary marketing expenses.

2. It is neither organized nor operated for the purpose of purchasing supplies and equipment for the use of members or other persons and turning over such supplies and equipment to them at actual cost plus necessary expenses.

In so far as the marketing end of the petitioner's business is concerned, this case appears to be on all fours with the case of *Pro-*

*ducers' Creamery Co.* v. *United States, supra.* In that case the corporation marketed milk for both stockholders and nonstockholders. As in the instant case, 30 percent of its business was done with nonstockholders. In denying exemption from income tax under the provisions of the Revenue Act of 1926, which in all material respects are the same as the provisions of the Revenue Act of 1928, the court said:

* * * We think it equally clear that it was not exempt under the 1926 act. This act does expressly extend the exemption to corporations having a capital stock, paying dividends on the stock, and accumulating a reserve, and does specifically provide that such an association may market the products of nonmembers to the extent of 50 per cent. of its business. It, however, just as the 1924 statute does, bases the tax exemption upon the fact that the association is organized to, and in operation does, turn back to those for whom it markets their produce the proceeds of the sales, less operating costs. Here the undisputed proof shows that appellant makes at least 30 per cent. of its profit from nonmembers to whom it turns nothing back.

The undisputed proof in this case shows that at least 30 percent of the profit realized by the petitioner from the operation of its elevator department was from nonstockholders to whom it did not and could not turn back anything other than the original price paid them for their grain, which was the market price. See also *South Carolina Produce Association* v. *Commissioner*, 50 Fed. (2d) 742; *Riverdale Co-operative Creamery Association* v. *Commissioner, supra; Fruit Growers' Supply Co.* v. *Commissioner*, 56 Fed. (2d) 90, all of which hold that in order for a cooperative company to be exempt from income tax it must, under the statute, turn back to the producers, whether they be stockholders or nonstockholders, the proceeds of sales less necessary marketing expenses.

While a marketing association is permitted to handle nonmember business, the plain intent of the statute is that if it deals with nonmembers it must deal with them upon the same basis that it deals with members. See *Central Co-operative Oil Association*, 32 B. T. A. 359.

The evidence in this proceeding is to the effect that all the profits of operation accrued to the stockholders either in the form of dividends paid to them at the rate of 8 percent per annum upon their shares of stock, or in patronage dividends which are distributed only to the stockholders in proportion to the amount of business transacted with each. Petitioner clearly does not fill the requirement of the statute that to be exempt the petitioner must turn back to its members or other producers the proceeds of sales, less the necessary marketing expenses, over certain amounts which may be retained as a necessary reserve. The petitioner's case is not strengthened by the fact that up to the end of the year 1928 it had not paid any patronage divi-

dends with the exception of certain patronage dividends in the form of shares of stock upon the business of 1918. The simple fact is that the petitioner was not in 1928 organized to come within the exempting provisions of the statute.

It is furthermore to be noted that the petitioner operated a general merchandise store upon the same method that it operated its elevator department. The profits accruing to the petitioner from that business accrued only to the stockholders.

Since the petitioner filed no return for 1928 it is liable to the 25 percent addition to the tax provided for by section 291 of the Revenue Act of 1928.

Reviewed by the Board.

*Judgment will be entered for the respondent.*