PEOPLES GIN COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87370. Promulgated February 14, 1940.

*Nelson E. Taylor, C. P. A.*, for the petitioner.
*F. L. Van Haaften, Esq.*, for the respondent.

346

OPINION.

TURNER: The petitioner is not a cooperative association exempt from Federal income tax within the meaning of section 103 of the Revenue Act of 1932 and section 101 of the Revenue Act of 1934. *Producers Creamery Co.* v. *Commissioner*, 55 Fed. (2d) 104; *Farmers Union Cooperative Co.*, 33 B. T. A. 225; affd., 90 Fed. (2d) 488. Furthermore it was organized under the laws of the State of Mississippi as a general business corporation for the purpose of carrying on a public ginning business. Its charter shows that it was organized under the provisions of Chapter 100 of the Mississippi Code of 1930, which deals generally with the organization of business corporations, rather than chapter 99 of the code, which provides for the organization of cooperative organizations.

It is now argued that the bylaws of petitioner fixed the price for ginning the cotton of petitioner's stockholders at actual cost and that the distribution in question constituted a rebate or refund of the excess of the amount paid by each stockholder over such cost and never at any time belonged to or became the profits of petitioner. In support of this contention, the petitioner relies particularly on *Uniform Printing & Supply Co.* v. *Commissioner*, 88 Fed. (2d) 75; and cites also *Trego County Cooperative Association*, 6 B. T. A. 1275; *Home Builders Shipping Association*, 8 B. T. A. 903; *Anamosa Farmers Creamery Co.*, 13 B. T. A. 907; *Farmers' Union Co-operative Association*, 13 B. T. A. 969; and *Fruit Growers Supply Co.* v. *Commissioner*, 56 Fed. (2d) 901, affirming 21 B. T. A. 315.

As we have observed, the petitioner was organized under the provisions of the Mississippi law dealing with the organization of general business corporations, and, more particularly, as shown by its charter, its purpose was to own and operate a public cotton gin. During the ginning season which gave rise to the amount here in dispute the petitioner dealt with its stockholders as it did with any

other patron of its gin. They were all charged the same price per bale for the ginning of their cotton. There was nothing in the by-laws giving the individual stockholders any right to have their cotton ginned at a price less than the price required of other patrons, and the only suggestion that there might have been some such thought in the minds of the organizers of the corporation is to be found at the conclusion of a resolution adopted immediately after organization of the petitioner to the effect that the petitioner should pay dividends on its stock of 10 percent and that the 10 percent dividend should be paid before any profits should be prorated on a baleage basis. The 10 percent dividend so provided for was never paid. After the ginning season, however, and after the profits here in question had been earned, the stockholders, at a meeting held on December 8, 1933, adopted bylaws to the effect that after the close of the ginning season the net profit earned by actual ginning operations and the profit on cotton seed purchases, together with other net profits of the corporation, should after necessary expenses had been paid be divided among the stockholders in proportion to the number of bales of cotton ginned by each, and, further, that the profits allocable to cotton ginned for nonstockholders should constitute company or corporate profits. Subsequently, at a stockholders' meeting held on May 5, 1934, a resolution was adopted apparently for the purpose of declaring and fixing more specifically the nature of the proceeds from cotton ginning, or, to state it differently, the price to be charged the stockholders for ginning their cotton. The substance of that resolution was that after the close of each ginning season and before the declaration of net profits, each and every stockholder should be reimbursed any amount paid by him to the gin in excess of the actual cost of ginning his cotton so that all stockholders' cotton should be ginned at actual cost.

We are not here called upon to determine the rights of the petitioner or its stockholders to the excess over cost of the amount paid by such stockholders for the ginning of cotton after the adoption of the bylaws in question or the nature of such excess in the hands of the petitioner before its distribution or refund to its stockholders, for at the time of the ginning operations which resulted in the profits here in question there were no such bylaws and the stockholders had no right to the return of any excess of the amount paid by them over the actual cost of ginning their cotton. They were dealt with by petitioner as it dealt with its other patrons. Their rights to the amount here in dispute resulted from subsequent action of the stockholders directing a distribution by petitioner to its stockholders out of its earnings during the year. Such a distribution constitutes the payment of a dividend and is not deductible in determining the petitioner's net income. The fact that the profits were distributed to stockholders on some basis other than the stock held by each stock-

holder does not make the distribution any the less a dividend. *Lincoln National Bank* v. *Burnet*, 63 Fed. (2d) 131; *Kate Hudson*, 34 B. T. A. 155; affd., 99 Fed. (2d) 630; certiorari denied, 306 U. S. 644; *Joseph Goodnow & Co.*, 5 B. T. A. 1154. Clearly for the year before us the cases relied on by petitioner are not in point.

*Decision will be entered under Rule 50.*