CENTRAL CO-OPERATIVE OIL ASSOCIATION, PETITIONER, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70290. Promulgated April 9, 1935.

*Robert Cahn, C. P. A.*, for the petitioner.
*James K. Polk, Jr., Esq.*, and *Arthur Clark, Esq.*, for the
respondent.

OPINION.

TURNER: The respondent determined an income tax deficiency
amounting to $612.73 against the petitioner for the year 1930. The
issue is whether or not the petitioner, being a cooperative associa-
tion, otherwise exempt from paying income tax in virtue of section
103 of the Revenue Act of 1928, is nevertheless taxable for income
derived from sales made to nonmember customers and to whom no
patronage dividends were paid.

The petitioner was organized as a cooperative association under
the laws of the State of Minnesota in March 1924, to buy, sell, and
otherwise deal in gasoline and petroleum products for its members.
In such connection it maintained two filling stations, on public high-
ways, where it sold these products to its members and the public
generally, on equal terms, in the regular retail trade. It also op-
erated six tank wagon trucks, through which it carried on a sales
business in the territory immediately surrounding its filling stations.
These tanks were operated by agents who were paid commissions on
the sales made.

The provisions of the taxing statutes under which the petitioner
claims the right to carry on a tax-exempt business are contained in
subdivision (12) of section 103, *supra*, which describe and limit its
cooperative functions to transactions as follows:

(12) * * * for the purpose of purchasing supplies and equipment for
the use of members or other persons, *and turning over such supplies and equip-
ment to them at actual cost, plus necessary expenses* * * * provided
the value of the purchases made for persons who are neither members nor
producers does not exceed 15 per centum of the value of all its purchases.
[Italics ours.]

The petitioner did not make specific purchases of equipment or
supplies for its patrons, but merely supplied their needs through
retail sales from its filling stations and tank trucks. These trans-
actions were of the regular commercial character, in which petitioner
realized a retailer's profit. The net of its profits, determined at the
end of each year, was distributed among the patrons in the form of

so-called " patronage dividends "; the dividend unit being determined upon a patronage basis.

To entitle a patron to share in distribution of the profits of a year's transactions, he was required to prove the amount of his purchases within six months after its close and, in default of such proof, the petitioner's charter provided the following:

* * * Failure to furnish satisfactory proof of the amount of patronage for the year within the subsequent six months shall release the association from any further liability thereof, and any part of the reserve for patronage refund remaining unpaid at the end of the following fiscal year shall be designated and accounted for as undivided profits.

The petitioner's gross sales during the taxable year amounted to approximately $330,000, of which $255,000 was to its members and the balance to nonmembers. The amount of patronage dividends accrued by petitioner for its Owatonna Station in 1930 was $44,088.32 and the patronage dividend refund accrued for its Blooming Prairie Station for 1930 was $16,130.68, or a total of $60,219, which represented a 20 percent purchase refund for that year. Petitioner, on its income tax return, only claimed and was allowed by respondent a deduction of $57,847.54 of purchase dividend refunds. Petitioner kept its books and made its income tax returns on the accrual basis, and in a recomputation of the deficiency it should be allowed a deduction of $60,219 for purchase dividend refunds accrued on petitioner's books for the year 1930, instead of the $57,847.54 deducted on its return and allowed by respondent. During the taxable year petitioner made sales of approximately $30,000 to nonmembers and nonproducers to whom no patronage dividends were paid or credited. Respondent has computed a profit on these sales and has taxed petitioner thereon, and it is this profit which results in the deficiency here involved.

The respondent contends that this profit, under the conditions shown, is subject to income tax under authority of *Fruit Growers Supply Co.* v. *Commissioner*, 56 Fed. (2d) 90.

The position of petitioner seems to be that in no event are cooperative associations liable to income tax so long as their transactions with nonmembers are kept within the 15 percent limit prescribed by section 103 (12) of the 1928 Act. In our opinion the respondent must prevail.

The exemption claimed by petitioner, like other special privileges granted by statute, is available only to those who comply strictly with the terms of the statute creating it. *Waynesboro Manufacturing Association*, 1 B. T. A. 911; *Farmers' Co-operative Milk Co.*, 9 B. T. A. 696; *Northwestern Drug Co.*, 14 B. T. A. 222; *Riverdale Co-operative Creamery Association*, 18 B. T. A. 1159; affd., 48 Fed. (2d) 711; *Fruit Growers Supply Co.* v. *Commissioner, supra.*

We do not think the petitioner's business was conducted in a manner to eliminate the nonprofit requirement of the statute, and this is essential if the special exemption provided for cooperative associations is extended. *Burr Creamery Corporation* v. *Commissioner*, 62 Fed. (2d) 407.

The petitioner sold its products to the public generally, including transients and tourists. At the end of each year it divided among such of its patrons as could prove the amount of their purchases during the year the share in its profits attributable to their business. The petitioner's bookkeeper, in testifying at the hearing and explaining how the dividends were determined, said:

At the end of the year, when our books are closed and the profit is acquired, the figure is acquired, why the tickets are all added up, each individual one is added up, and then the amount of sales that we have accumulated are divided by the profits, to get the amount of dividend to be paid. Then that, I would say, is paid to all, regardless of whether they earned it, or whether some one else earned it.

If we could accept the petitioner's agency fiction and hold that, in purchasing its stock in trade, it merely anticipated the requirements of its patrons and thus purchased it subject to their use, it would still be impossible for us to find that the scheme followed met the statutory requirements. Obviously some patrons, local as well as tourists and transients, paid a profit to petitioner, which, under the scheme, was not returned to them, while other members and patrons received the benefits of such profit.

In *Fruit Growers' Supply Co.* v. *Commissioner, supra,* which the respondent has cited as authority for this action, the court held that earnings derived by a cooperative association in selling surplus supplies to nonmembers constituted taxable gain. We think that decision is in point with these issues and that it sustains the respondent's position.

The contention of the petitioner that the Act of 1921, under consideration in the case cited, was narrower than our 1928 Act, is without force and not supported by fact. The same rights of cooperative associations, as was pointed out by that decision, to deal with nonmembers was recognized and was extended through regulations promulgated by the Secretary of the Treasury. These Treasury interpretations were carried forward into the text of our present law through amendments to the 1926 Act, the purpose being, as stated by the Senate Finance Committee in its report, not to broaden its scope, but to make clear that which was then recognized as the existing law.

For the reasons stated the respondent is sustained in taxing profits from sales on which no patronage dividends were paid.

*Decision will be entered under Rule 50.*