FARMERS UNION CO-OPERATIVE OIL COMPANY, NELSON, NEBRASKA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 83485. Promulgated July 13, 1938.

*Wilfred Wimmell, Esq.*, for the petitioner.
*James C. Maddox, Esq.*, for the respondent.

66

68

**OPINION.**

HILL: The sole question presented for determination is whether petitioner is exempt from the payment of income tax in the taxable year involved. The petitioner claims such exemption under the Revenue Act of 1932, section 103 (12) (b), which in pertinent part is as follows:

(12) Farmers', fruit growers', or like associations organized and operated on a co-operative basis * * *

(b) For the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses. Exemption shall not be denied any such association because it has capital stock, if the dividend rate of such stock is fixed at not to exceed the legal rate of interest in the State of incorporation or 8 per centum per annum, whichever is greater, on the value of the consideration for which the stock was issued, and if substantially all such stock * * * is owned by producers who * * * purchase their supplies and equipment through the association; * * * Such an association may * * * purchase supplies and equipment for nonmembers in an amount the value of which does not exceed the value of the supplies and equipment purchased for members, provided the value of the purchases made for persons who are neither members nor producers does not exceed 15 per centum of the value of all its purchases.

To constitute such exempt status for petitioner all of the following facts must be established:

1. That it is a farmers', fruit growers', or like association organized and operated on a cooperative basis.

2. That it was organized and operated for the purpose of purchasing supplies and equipment for the use of its members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses.

3. That its stock dividend rate is fixed at not to exceed the legal rate of interest in the state of incorporation or 8 per centum per annum, whichever is greater, on the value of the consideration for which the stock was issued.

4. That substantially all of the stock of petitioner was owned by producers who purchase their supplies and equipment through petitioner.

5. That the supplies and equipment purchased for nonmembers do not exceed in value the value of like purchases for members.

6. That the value of the purchases made for persons who are neither members nor producers does not exceed 15 percent of the value of all its purchases.

Our discussion of whether such requisite facts have been established will follow the numerical order of their statement.

1. The evidence shows that petitioner was a corporation organized by farmers under the cooperative laws of Nebraska and that its business operations consisted solely in buying petroleum products and selling them to any one desiring to purchase from it, whether members or nonmembers. To three of its shareholders sales of gasoline and other petroleum products were made on a nonprofit basis. These three shareholders were farmers' cooperative organizations and sales were made to them at actual cost plus only 2 cents a gallon to cover expense of hauling such products from petitioner's station or warehouse at Nelson to the purchasers. The sale prices to such patrons included

none of the general necessary expenses of petitioner totaling $4,827.22. To four nonmember patrons sales were made on the same basis. These nonprofit sales totaled $4,434.11. To all other patrons, members and nonmembers alike, sales totaling $23,809.31 were made at regular commercial retail prices determined without regard to actual cost plus necessary expenses. These latter prices were intended to, and did, include a profit above actual cost plus necessary expenses.

Patronage dividends were paid or credited only to patrons of record to whom sales were made at regular retail prices, but only members received payment of such dividends. Nonmembers, even though credited therewith, did not receive payment of patronage dividends. A nonmember had to qualify for membership and pay $10 for a share of petitioner's capital stock before he could receive payment of a patronage dividend credited to him. Moreover, it affirmatively appears that there were a number of nonmember patrons to whom patronage dividends were credited who could never qualify as members and, therefore, could never under any condition receive payment of such dividends. It also affirmatively appears that there was a considerable though unascertainable number of unknown nonmember patrons to whom patronage dividends were not, and could not be, credited or paid.

It therefore appears that three member and four nonmember patrons were preferred over all other patrons. The sales to them were at actual cost without adding thereto any amount to cover necessary expenses (except truckage), stock dividends, or reserves. All other member and recorded nonmember patrons purchased at competitive retail prices, fixed without regard to actual cost plus necessary expenses, and received payment and credit, respectively, of patronage dividends out of profits remaining after actual costs, necessary expenses, stock dividends, and statutory reserves had been deducted from gross sales. All unrecorded patrons purchased at competitive retail prices and received neither payment nor credit of patronage dividends.

The preferred group of patrons realized a saving which was tantamount to a bonus on their purchases, measured by the proportionate share of the necessary general expenses of petitioner which they would have been required to pay had they purchased on a basis of actual cost plus necessary expenses. Their share of the necessary expenses was paid by the other patrons. Not only did this preferred group contribute nothing to petitioner's profits or to defray its necessary expenses, but the three shareholders in that group received stock dividends out of petitioner's profits from sales to other patrons at regular retail prices. The evidence negatives the fact that peti-

tioner was operated on a cooperative basis, either as among its members alone, or as between its members and nonmembers.

2. We have found as a fact that petitioner was not operated in the taxable year for the purpose of purchasing supplies and equipment for the use of its members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses. Our discussion in paragraph 1 next above is sufficient to show the correctness of our finding of fact referred to and reiterated in this paragraph.

3. Petitioner meets the requirements of statute as to the rate of stock dividends fixed.

4. All of the stock of petitioner was owned by producers, but the evidence fails to show that all of its shareholders purchased their supplies and equipment through petitioner.

5 and 6. The evidence shows that no specific purchases of supplies and equipment were made by petitioner either for members or nonmembers. The evidence merely shows that the value of supplies and equipment sold by petitioner to nonmembers was less than the value of such sales to members and that the value of such sales to persons who were neither members nor producers did not exceed 15 percent of the value of all its purchases.

We, therefore, conclude and hold that petitioner was not exempt from payment of income tax in the taxable year herein involved. The following cases support in principle our conclusion: *Fruit Growers' Supply Co.*, 21 B. T. A. 315; *Central Co-operative Oil Association*, 32 B. T. A. 359; *Farmers Co-Operative Co. of Wahoo, Neb.* v. *United States*, (Ct. Cls.), 23 Fed. Supp. 123.

In *Fruit Growers Supply Co.* and *Central Co-Operative Co., supra,* the deficiencies determined by the Commissioner were based only on that part of petitioner's income which represented profits on sales to nonmembers and was not distributed to them. The Board in both cases upheld the Commissioner's determination, but the question of whether an association claiming exemption from income tax as a farmers' cooperative association could under the statute be partially exempt and partially not exempt was not presented to the Board in either of the cases. The decision in *Fruit Growers' Supply Co.* was cited as authority for the holding in *Central Co-Operative Oil Association.* In the report in the first case we said:

What the Commissioner did was first to determine the petitioner's net income for each year in a manner similar to that which would be followed in the case of any taxable corporation. Since we have held that the petitioner is not an exempt corporation, his initial step in such a determination would seem to be a proper one. From the total net income as thus determined the Commissioner then allowed a further deduction of all patronage dividends which were applicable to the respective years and considered the difference between the total net income and the patronage dividends as taxable income. And if

we understand clearly the amounts which have been allowed in this latter deduction, the effect was to give the petitioner the benefit as a deduction of all patronage dividends declared or paid during the years with which we are concerned. The essence of what the petitioner asks is to say that all surplus earnings for a given year which have not been paid out as such dividends by the end of such year automatically became patronage dividends accrued, without any action on the part of the petitioner declaring them as dividends, and that they are therefore deductible under its accrual system of accounting * * * We are unable to agree with the foregoing contention. In the first place, we find nothing in the governing statute which provides for a partial exemption from taxation of corporations of the character of the petitioner.

In *Eugene Fruit Growers' Association*, 37 B. T. A. 993, petitioner was a cooperative marketing association and had marketing agreements only with fruit growers who were members of the association. Nonmembers did not participate in such operations. The only issue before the Board in that case was whether the cooperative operations were exempt. No claim of exemption as a cooperative purchasing association was made in that case. In the opinion therein the Board said:

For all that appears they (fruit supplies) were handled at cost and although such articles were admittedly supplied to some extent to nonmembers, no attempt was made by respondent to elicit further details.

Compare, also, as supporting the principle of our holding in the instant case, *Producers' Creamery Co.* v. *United States* (C. C. A., 5th Cir.), 55 Fed. (2d) 104, in which the court held that the appellant in that case was not a cooperative association as contemplated in the act and said:

It is a universal rule that one who would claim the benefits of a statute must bring himself, at least substantially, within its terms. Especially is this true of claimants under statutes purporting to exempt from taxation.

Reviewed by the Board.

*Decision will be entered for the respondent.*

———

SMITH, dissenting: The findings of fact in this case are to the effect that "less than 15 percent of the value of the total sales was made to nonproducers." This, I think, is tantamount to holding that the value of purchases made for persons who were neither members nor producers does not exceed 15 percent of the value of all its purchases. The evidence in the case clearly supports such finding.

In *Producers' Creamery Co.* v. *United States* (C. C. A., 5th Cir.), 55 Fed. (2d) 104, the rule is laid down that a corporation is not exempt from income tax unless it proves that it is "substantially" within the terms of the statute. I think that the petitioner has shown that it is substantially within the terms of the statute. To its members who were other cooperatives it made sales of gasoline at cost.

In such case there was, of course, no necessity for crediting them with any part of the patronage dividends. The fact that those sales did not bear any part of the overhead cost seems to me to be *de minimis*. I think that the petitioner qualifies as a cooperative exempt from income tax.

MELLOTT agrees with this dissent.