THE THIBAUT & WALKER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96149. Promulgated June 11, 1940.

*Alexander F. Makay, C. P. A.,* for the petitioner.
*Leonard A. Spalding, Jr., Esq.,* for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency of $1,862.05 in the petitioner's income tax for the calendar year 1936. The only issue for decision is whether the Commissioner erred in failing to allow a credit of $14,737.24 under section 26 (c) (1) of the Revenue Act of 1936 in computing the surtax on undistributed profits. The facts are presented by a stipulation which the Board adopts as its findings of fact.

The petitioner is a corporation, organized under the laws of New York. The ownership of its outstanding stock at all times material hereto was as follows:

|  | Shares |
|---|---|
| Randall O. Walker | 1, 040 |
| Heermance M. Howard | 320 |
| Kenneth J. Howe | 320 |
| Oscar S. Swanson | 320 |
| Total | 2, 000 |

The par value of each share was $100. Its adjusted net income as defined in section 14 (a) (1) was $34,737.24 for the taxable year. It declared and paid dividends of $20,000 during the year. It claims that it is entitled under section 26 (c) (1) to a credit of $14,737.24, "the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends." It bases this contention upon an agreement entered into on August 9, 1933, by the petitioner and the four individuals who owned all of its stock.

The agreement recites that the four individuals own the capital stock of the corporation; they desire to provide a conservative policy for the growth of the corporation and an adjustment of interest in the event of death of any of them; the corporation has taken out life insurance to compensate it for loss from the death of any of them and to enable it to finance purchases of stock deemed advisable upon the death of any of them; they desire to provide a plan by which the corporation will supply any additional funds necessary to complete the purchases; and they desire to bind their estates to sell the stock in case of their deaths and the corporation has agreed to purchase the stock in so far as it may lawfully do so.

The agreement provides that in consideration of the premises and of $1 paid by each party to each of the others, "It is understood and agreed", first, (a) that the individuals agree to vote their stock so as to elect themselves directors and as directors to cause themselves

to be elected officers and paid certain salaries; (b) that upon the death of Walker, a director shall be elected in a certain way; and:

SECOND: Walker, Swanson, Howard and Howe agree that as Directors of the Corporation to such extent as the law permits they bind themselves to vote in favor of the following policy in reference to the payment of dividends by the Corporation:

At the end of each fiscal year, payment of a dividend of not less than 10%, if earned, payable under the provisions of the law of the State of New York, and after crediting the surplus account with not less than $15,000, if earned, payment of the balance of net earnings to the officers of the Corporation as additional salaries, in such proportion as their respective salaries as above set forth bear to such balance of net earnings.

The agreement next provided in considerable detail for the purchase by the corporation of the stock of any of the four individuals who might die. Each individual also agreed not to sell his stock without first offering it to the other three. The agreement contained this provision:

FIFTEENTH: It is understood and agreed that this contract is divisible as to all of its provisions and that the illegality of any part shall not thereby render the whole void or voidable.

Obviously the corporation was a party to the above agreement and the agreement contains a provision which expressly deals with the payment of dividends. Also, a distribution in excess of 10 percent during the taxable years would have violated the provisions of the agreement. Nevertheless, it is our opinion that section 26 (c) (1) does not apply. The corporation did not contract that it would refrain from paying dividends in excess of 10 percent. On the contrary, it was the four individuals who agreed that as directors they would vote in favor of a dividend policy limiting the dividends to 10 percent and requiring that the next $15,000 of earnings be added to capital. Congress intended to give a credit to a corporation only where the corporation had bound itself not to pay a dividend. This is reasonably clear from the language of the section. The legislative history indicates that Congress was trying to relieve situations in which a corporation had contracted with creditors to retain its earnings for their protection, but did not have in mind contracts such as this one, entered into by parties inside the corporate group to refrain from declaring dividends for their own mutual benefit. Seidman's Legislative History of Federal Income Tax Laws, p. 216, *et seq.*, relating to section 26 (c) (1). "The intention of the lawmaker controls in the construction of taxing acts as it does in the construction of other statutes, and that intention is to be ascertained, not by taking the word or clause in question from its setting and viewing it apart, but by considering it in connection with the context, the general pur-

**32**

poses of the statute in which it is found, the occasion and circumstances of its use, and other appropriate tests for the ascertainment of the legislative will." *Helvering* v. *Stockholms Enskilda Bank*, 293 U. S. 84. The petitioner is not entitled to the credit.

*Decision will be entered for the respondent.*