THE METAL SPECIALTY COMPANY, A CORPORATION ORGANIZED AND DOING BUSINESS UNDER THE LAWS OF THE STATE OF OHIO, ESTE AVE. & B. & O. RAILROAD, CINCINNATI, OHIO, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98530. Promulgated March 13, 1941.

*Charles W. Baker, Jr., Esq.*, for the petitioner.
*Paul A. Sebastian, Esq.*, for the respondent.

OPINION.

DISNEY: This proceeding involves income tax for the fiscal year ended September 30, 1937, in the amount of $7,152.09, in which amount the respondent determined deficiency. The question is whether there was error in the denial of a credit of $29,017.36 claimed under section 26 (c) (1) of the Revenue Act of 1936.[1] All facts were stipulated and are found by us as so stipulated, by reference. Except for reference to petitioner's return for the taxable year, copy of which is made a part

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\* \* \* \* \* \* \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.

of the stipulation, and reference to the disputed item of credit claimed, and exhibits attached to the stipulation, it recites, as follows:

*Three:* That Fred J. Flach during his liftime owned 450 shares of the 700 outstanding shares of common stock of The Metal Specialty Company of Cincinnati, Elaine Carew Flach, his wife, owned 50 shares, Vernon B. Chase owned 75 shares, Fred Moore owned 75 shares, and Henry C. Yeiser, Jr., owned 50 shares:

That Fred J. Flach was the president and head of the Metal Specialty Company;

That Fred Moore was in charge of manufacturing, and Vernon B. Chase was in charge of sales;

*Four:* That on January 7, 1934, Elaine Carew Flach, wife of Fred J. Flach, was killed in an automobile accident, and Fred J. Flach died two days later on January 9, 1934, of the same cause, leaving two daughters, Betty Carew Flach, a minor aged 17 years, and Elaine Flach Tietig, wife of Arnold Tietig, III., aged 22 years.

That Ben E. Tate, B. W. Lamson, H. E. Coombe, were business men and close personal friends of Fred J. Flach who went on the Board to maintain the status quo, and were acting on behalf of the Flach interests.

*Five:* That by reason of his death a reorganization became necessary and a certain method of reorganization of The Metal Specialty Company was proposed, and in order to carry out said plan of reorganization, Arnold Tietig, III. purchased the shares of stock owned by Henry C. Yeiser, Jr. Thereupon on the 24th day of May, 1935, at a special meeting of the Board of Directors of The Metal Specialty Company, a resolution was adopted providing for a plan of reorganization and providing for the amendment to the articles of incorporation of The Metal Specialty Company, a copy of the minutes of said meeting being hereto attached and expressly made a part of this stipulation and marked Exhibit "B".

*Six:* And thereupon on June 25, 1935, at a meeting of the stockholders wherein all the stockholders were present in person or by proxy, the proposed plan of reorganization was approved and adopted, and they unanimously adopted the resolution of amendment to the articles of incorporation and all of the stockholders signed said minutes in person or by proxy, a copy of said minutes being hereto attached and marked Exhibit "C"; and thereafter within a few days of the meeting, all persons who signed by proxy signed in person.

*Seven:* That thereupon on the 27th day of June, 1935, a certificate of amendment to the articles of incorporation of The Metal Specialty Company was filed with the Secretary of State. A copy of said amended articles of incorporation is hereto attached and expressly made a part hereof and marked Exhibit "D";

That certificates for the first and second preferred and common stock in pursuance of said reorganization were issued to all the stockholders as set forth in the reorganization, and all certificates of both first and second preferred stock then or thereafter issued were issued upon the same form of stock certificate hereto attached and expressly made a part hereof, marked Exhibit "E", and all certificates of common stock then or thereafter issued were issued upon the form of stock certificates hereto attached and expressly made a part hereof and marked Exhibit "F".

*Eight:* All the stockholders thereupon surrendered the stock certificates held by them prior to the reorganization and accepted new certificates in accordance with the agreement of reorganization. On July 20, 1935, 787½ shares of common treasury stock was sold to Fred Moore and 787½ shares of common treasury stock was sold to Vernon B. Chase. Later, prior to May, 1936, forty-one (41) shares was issued by the company to others not parties to the reorganization.

The minutes of the special meeting of the petitioner's directors, held May 24, 1935, and referred to as Exhibit B in the fifth paragraph of the stipulation, *supra*, recited in part:

After providing for the payment of cumulative dividends on the preferred stock and before any dividends are declared, paid or set aside to or for other stockholders, the directors shall set aside from the remaining surplus earnings five (5%) percent on the first Ten thousand ($10,000.00) Dollars surplus earnings or less, ten (10%) percent upon the next Five thousand ($5,000.00) Dollars surplus earnings or less, fifteen (15%) percent upon the next Ten thousand ($10,-000.00) Dollars surplus earnings or less, and twenty-five (25%) percent upon the next Ten thousand ($10,000.00) Dollars surplus earnings or less, and fifty (50%) percent upon all surplus earnings over and above Thirty-five thousand ($35,-000.00) Dollars, and such additional sums as the Board of Directors may consider advisable, as a sinking fund to be held and used for the redemption of the preferred stock, and for no other purpose. * * *

This provision the petitioner contends is a clause restricting the payment of dividends, under section 26 (c) (1) of the Revenue Act of 1936. The argument is that, having been first passed by the board of directors, and then approved and agreed to at a stockholders' meeting where all stockholders were present in person or by proxy and all stockholders signed the minutes, the statute was satisfied, since, it is contended, the contract was executed by the company "in the actual doing of that which was required to put this agreement into effect; the company filed with the secretary of state the amendment to the charter of the company on June 27, 1935"; and the stock was exchanged. Thus it is argued there was an agreement between the corporation and all parties signatory thereto, in writing, prior to May 1, 1936, and expressly dealing with payment of dividends. Petitioner stresses the fact that it is not claiming that either the charter or the statement on the stock certificates is a contract under the revenue act, but that the contention is that "the agreement in writing contained in the minute book of both stockholder and director meetings is the contract in writing and within the provisions of Section 26 (c) 1 of the Revenue Act of 1936." The petitioner points out that the new stock was not issued proportionately to the old, in some instances, that therefore the matter was arranged by contract and could not have been arranged merely by corporate action, that the company on its part executed the contract by delivering to the secretary of state the certificate of amendment and charter, and that when the stockholders turned in their old stock and received the new stock, and the corporation issued new certificates, a contract was fully executed by all parties.

In our opinion, petitioner's contention can not be sustained. So far as emphasis is laid upon the fact of signature of all stockholders upon the corporate resolution, we held in *Thibaut & Walker Co.*, 42 B. T. A. 29, that a contract expressly dealing with payment of dividends, between four sole stockholders of a corporation, to which con-

tract the corporation was a party, did not bind the corporation not to pay dividends. The element of agreement between the stockholders we therefore consider not determinative under the statute. Considering the corporate resolutions: In *Helvering* v. *Northwest Steel Rolling Mills, Inc.,* 311 U. S. 46, the Court, construing the same section herein involved, said:

* * * The natural impression conveyed by the words "written contract executed by the corporation" is that an explicit understanding has been reached, reduced to writing, signed and delivered. True, obligations not set out at length in a written contract may be incorporated by specific reference, or even by implication. But Congress indicated that any exempted prohibition against dividend payments must be expressly written in the executed contract. It did this by adding a precautionary clause that the granted credit can only result from a provision which "expressly deals with the payment of dividends."

That the language used in section 26 (c) (1) does not authorize a credit for statutorily prohibited dividends is further supported by a consideration of section 26 (c) (2). By this section, a credit is allowed to corporations contractually obligated to set earnings aside for the payment of debts.[8] [It is not considered necessary to quote footnote here.] That this section referred to routine contracts dealing with ordinary debts and not to statutory obligations is obvious—yet the words used to indicate that the section had reference only to a "written contract executed by the corporation" are identical with those used in section 26 (c) (1). There is no reason to believe that Congress intended that a broader meaning be attached to these words as used in section 26 (c) (1) than attached to them under the necessary limitations of 26 (c) (2).

In the light of the breadth of the above language, we consider it to apply here, though the Court was discussing the corporate charter (which it held not to satisfy the statute) and not a corporate resolution, as here. The Court plainly meant to hold that this section "referred to routine contracts dealing with ordinary debts." Obviously, we have here no routine contract dealing with ordinary debts, for herein the petitioner must for a contract rely upon corporate minutes, and for execution of the alleged contract by the corporation, particularly required by the statute, must rely upon delivery of the certificate of amendment and charter to the secretary of state.

In *Davison-Joseph Campau Realty Co.,* 41 B. T. A. 675 and in *Atlas Supply Co.,* 43 B. T. A. 324 we held that a corporate bylaw is not "a written contract executed by the corporation" covered by the statute. In the latter case we referred to legislative history of the statute where the requisite contract of a corporation was referred to as one "entered into with its creditors." This is to the same effect as the statement in *Northwest Steel Rolling Mills, Inc., supra.* We see no essential difference, so far as here pertinent, between a bylaw and a stockholder's resolution. Both are merely matters of internal management of a corporation, adopted, that is, agreed upon, by those individuals owning and controlling the corporation. They reflect agreements of the stockholders *inter sese,* but not agreements

of the corporate entity with others, within the intendment of the Federal revenue act. We think a routine contract with creditors was intended to be covered by the statute, and not some intramural arrangement made by the stockholders of the corporation providing for a sinking fund for retirement of preferred stock.

.. We conclude and hold that the respondent did not err in denying the credit claimed, under the provisions of section 26 (c) (1) of the Revenue Act of 1936.

*Decision will be entered for the respondent.*