COUNCIL BLUFFS GRAPE GROWERS ASSOCIATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98498.  Promulgated April 9, 1941.

*John L. Peterson, Esq.*, for the petitioner.
*Gene W. Reardon, Esq.*, for the respondent.

OPINION.

TURNER: The respondent determined deficiencies in income tax for the years 1934 and 1935 in the respective amounts of $488.02 and $388.02, and excess profits taxes for the same years in the respective amounts of $177.46 and $117.97. The only issue is whether the petitioner is exempt from tax as a farmers' or fruit growers' cooperative marketing association within the meaning of section 101 (12) of the Revenue Act of 1934.

The case was submitted upon a written stipulation of facts and the facts as stipulated constitute our findings herein.

The Council Bluffs Grape Growers Association was organized as a corporation under chapter 390, Code of Iowa 1924, and ever since its incorporation in 1927 has had its principal place of business in Council Bluffs, Iowa. It was organized for the purpose of handling upon a commission basis fruits and products of its members and to buy, sell, and handle other commodities which may be incidental and necessary to the proper conduct of its business. Persons engaged in the production of the products or in the use or consumption of the supplies handled by or through the petitioner, including the lessors and landlords of lands used for the production of such products who receive as rent part of the crop raised on the leased premises, may become members of the petitioner association.

Under petitioner's bylaws, which were adopted in April 1927 and were in effect during the taxable years 1934 and 1935, the manager of the association was authorized to receive and ship fruits for nonmembers. The bylaws provide that "The Association shall charge 10 per cent for selling produce handled by it and such additional charge for ice and handling as the Board of Directors may deem necessary, equitable and just with the exception of apples or pears in carload lots, then 5 per cent selling charge will be made. When 5 per cent is charged those particular fruits do not enter into refund." The bylaws also provide that the refund which would ordinarily be paid to members of the association "shall be withheld for a period of five years beginning in 1927 and such refund for such periods shall be used to build up a cash reserve for the association to aid and assist in the proper conduct and carrying on of its business. * * * At the annual meeting of the association in January after the expiration of said five years, and at each annual meeting thereafter a refund may be ordered paid to the membership on the basis of the amount that such members would have coming for the fifth year previous to the ordering of the paying of the refund."

Since the adoption of its articles of association the petitioner's business has been conducted generally on a cooperative basis. The asso-

ciation has no capital stock, but in lieu thereof issues memberships to growers, who are required to pay a fee of $10 and annual dues of $1. All memberships are held by producers.

The petitioner transacts business for both member and nonmember patrons. "Non-member growers were not entitled to share in the corporate profits in 1934 and 1935. The earnings of petitioner in the amount of $3,250.04 in 1934 and $902.80 in 1935 were set up on the petitioner's books as an accrued liability to member growers' refund account and the member growers were issued unpaid refund certificates in accordance with the by-laws then in effect."

"In 1935 the above amounts, totaling $4,152.84, were credited to working capital reserve which is shown on the petitioner's books and income tax returns for 1934 and 1935 as 'net worth' account, from unpaid refund certificates. No patronage dividends were paid in cash to either member or non-member patrons for the years 1934 and 1935."

"The petitioner only transacted business with producers during the years 1934 and 1935, and during said years about 5 per cent of the gross business of petitioner was transacted with non-member growers. No patronage dividend credit was made to non-members which might enable them to receive their proportionate share of profits for 1934 and 1935 upon becoming members."

The main crop handled by petitioner consisted of grapes, which, prior to the agricultural depression, petitioner was able to market when packed in baskets. Since about 1933 petitioner has been able to market only a portion of the grapes so packed. Upon the repeal of national prohibition it began marketing the balance of the grapes by making them into wine. A Federal permit as a winery was granted to petitioner in 1933 and in that and subsequent years it became necessary for it "to expend large sums of capital for wine-making equipment and large funds were required in order to age the wine for three years before it could be marketed."

On September 4, 1937, the petitioner amended its bylaws to permit nonmember patrons to participate or share in patronage dividends equally on the same basis as members.

The petitioner filed income tax returns for the years 1934 and 1935 in which it claimed exemption from the tax. The respondent denied the exemption, made certain adjustments in net income, and determined the deficiencies shown above.

In support of its contention that it has qualified as an exempt cooperative marketing association within the meaning of the act, the petitioner asserts on brief that during the years 1934 and 1935 the members and nonmembers of the association were "treated equally." It also contends that the exemption should not be denied since the business transacted with nonmembers was "negligible." The respond-

ent contends that, since the nonmembers neither shared nor were entitled to share in the profits of the association during the taxable years, it did not qualify as a corporation exempt from tax.

Section 101 (12) of the Revenue Act of 1934 of the statute provides that "farmers', fruit growers', or like associations organized and operated on a cooperative basis (a) for the purpose of marketing the products of members or other producers, and turning back to 'them' the proceeds of sales, less necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them" shall be exempt from taxation. Obviously the petitioner does not qualify under the provisions of the statute quoted. Not only was it not organized for the purpose of turning back to nonmembers the proceeds from the sale of products sold for them less the necessary marketing expenses, but it did not actually turn back to nonmembers any part of such proceeds, and under its bylaws nonmembers had no right to such rebates. The petitioner argues, however, that members and nonmembers were in fact "treated equally" in that no rebates were made to either members or nonmembers "for the years 1934 and 1935." It further argues that the failure to make rebates was due to the accumulation of a reasonable reserve which was necessary to meet the changing conditions in the grape-growing industry resulting from the depression, and that the statute specifically provides that exemption shall not be denied to any such association "because there is accumulated and maintained by it * * * a reasonable reserve for any necessary purpose." In making the above argument the petitioner ignores the plain language and spirit of the statute. Congress has stated in clause (a) that in order to be entitled to exemption the association must be organized and operated "for the purpose of marketing the products" of its patrons, nonmembers as well as members, "and turning back to them the proceeds of sales, less necessary marketing expenses." Clearly there was no purpose or intent in the organization of the petitioner to turn back to nonmembers at any time any part of the proceeds from the sale of their products, and the clause to the effect that exemption shall not be denied because of the accumulation of a reasonable reserve for any necessary purpose in no way relaxes the requirement under clause (a). To be entitled to exempt status not only must an association meet the statutory test as to purpose of organization, but it must be organized in such manner as to require the carrying out of that purpose. The petitioner here was not so organized. See Regulations 86, art. 101 (12) 1; *Farmers Mutual Cooperative Creamery of Sioux Center, Iowa*, 33 B. T. A. 117; *Producers Creamery Co.* v. *United States*, 55 Fed. (2d) 104; *Fruit Growers Supply Co.*, 21 B. T. A. 315; affd., 56 Fed. (2d) 90; and *Farmers Union Co-Operative Oil Co., Nelson, Nebraska*, 38 B. T. A. 64. With further

respect to the petitioner's argument that members and nonmembers were "treated equally" in that no patronage dividends were paid to either member or nonmember patrons "for the years 1934 and 1935," there is some question whether the record would support such a conclusion. According to the bylaws, the profits for any particular year could not be rebated even to members until the fifth succeeding year, and during the taxable years before us, 1934 and 1935, the only rebates permitted by the bylaws would have been from the profits realized for the years 1929 and 1930. The record is silent as to whether or not rebates were made in 1934 and 1935 for the years mentioned and, as we have already pointed out, no rebate could have been made to nonmembers under any circumstances, the bylaws not having been changed until 1937 to allow nonmembers to participate.

The respondent's determination that petitioner is not an exempt organization is sustained.

*Decision will be entered under Rule 50.*