MIDLAND COOPERATIVE WHOLESALE, A CO-OPERATIVE ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100612. Promulgated June 26, 1941.

*E. J. Pearlove, Esq.*, and *Benjamin Drake, Esq.*, for the petitioner.
*H. A. Melville, Esq.*, for the respondent.

OPINION.

MELLOTT: The Commissioner determined that the amounts credited by petitioner to its members and held in its "Patrons' Equity Reserve" account are not deductible from its gross income for the taxable years. Whether this determination is or is not correct is the first issue to be determined.

Both parties recognize that there is no specific statutory provision for the deduction of patronage dividends from the gross income of a cooperative association. The Treasury Department, however, as pointed out in *Fruit Growers Supply Co.*, 21 B. T. A. 315, 326; affd., 56 Fed. (2d) 90, with "great liberality", has allowed such deductions "to the end that substantial justice may be done to an association which is engaged in cooperative marketing or purchasing work but which may not be exempt from taxation." The justification for the ruling rests upon the fact that the so-called dividends are in reality rebates upon the business transacted by the association with its members rather than true income to the association.

Respondent, in determining the deficiency, correctly allowed the deduction of the amounts paid in cash by petitioner to its members, based upon the business transacted by them in each year, though payment was not made of such amounts until the following year. He concedes that a definite liability to make such payments—clearly a

prerequisite to their deduction—arose during the taxable years. *Home Builders Shipping Association*, 8 B. T. A. 903; *Anamosa Farmers Creamery Co.*, 13 B. T. A. 907; *Farmers Union Cooperative Association*, 13 B. T. A. 969; *Farmers Union State Exchange*, 30 B. T. A. 1051, 1066.

As to the amounts credited by petitioner to its members upon its books and not paid over to them during the following year respondent takes a different position. Pointing to some of the corporate records received in evidence, especially the minutes of the directors' meetings and the minutes of the annual meetings, he argues that they show petitioner was in need of working capital and that the members recognized the necessity of either borrowing it or raising it among themselves; that this could be, and was, accomplished by the members leaving a substantial portion of their dividends with petitioner; that the so-called reserve was not a true reserve, but an allocation of a part of petitioner's undivided surplus made in the hope of avoiding income tax; that setting aside a portion of its income in such an account "was contrary to, or at least not provided for by, the state law, petitioner's Articles of Incorporation and its bylaws"; and that additional corporate action is required to be taken before petitioner becomes under any liability to pay to its members the amounts set aside.

The evidence does indicate that petitioner was in need of working capital and that the membership desired to aid it in getting out of debt by leaving a portion of their dividends with it. It is also true that at least petitioner's directors knew all earnings placed in "permanent surplus" would be included in its gross income in computing the amount of its income tax. The motive of petitioner and its members does not seem to be very material to the present controversy. It is important to determine, however, whether the action taken was in violation of state law or charter provisions and whether additional corporate action is required before petitioner is under any definite liability to make payment; so these questions will now be considered.

Petitioner's articles of incorporation and bylaws follow quite closely the provisions of the Minnesota state law. Both provide for the deduction of operating costs, the setting aside of a reserve for depreciation, and the creation of a reserve against other possible losses. Both require that there be deducted an amount sufficient to pay interest on the paid-up capital of the association. The bylaws provide for the payment of interest at not to exceed 5 percent per annum. The state law authorizes the payment of interest at a rate not in excess of 6 percent per annum. There may also be deducted and set aside such amounts as may be required to provide for the

erection of new or additional buildings or for additional machinery or equipment. Provision is also made for "creating a reserve for permanent surplus." The balance of the net income, in the language of the state statute, is to "be considered and termed as 'undivided surplus' for such fiscal year and shall be available for distribution among the members of such cooperative association on the basis of patronage." Distribution of the undivided surplus is required to be made annually on the basis of patronage during the preceding fiscal year.

It is true that neither the state law nor petitioner's articles of incorporation and bylaws, at least prior to the annual meeting of 1938, specifically referred to a patrons' reserve account. The "undivided surplus," however, clearly belonged to the members or patrons and, both under the law of the state and under petitioner's bylaws, was required to be distributed to them annually on the basis of patronage. While the setting aside of a portion of such amount is not specifically authorized, there is nothing in the state statute or the bylaws prohibiting such action being taken. We are therefore of the opinion that when petitioner, with the consent and knowledge of its members, set aside a portion of its earnings in a reserve account and allocated it among them, it did not violate any provision of the state law or act in violation of its charter provisions.

The next question is whether additional corporate action is required to be taken before petitioner becomes under a definite liability to pay to its members the amounts set aside to their credit. Petitioner points out that the amounts to be paid forthwith to its members in cash and the amounts to be held in reserve were both authorized at the same time and by the adoption of one resolution; that both were allocated to the members at the same time and entered upon the corporate ledger as credits; and that both were computed upon the business transacted with the association. It argues, therefore, that both were properly accrued as liabilities upon its books. We agree with petitioner. In our opinion all necessary steps were taken in the taxable years to obligate petitioner to pay the earnings over to its members. The resolutions of the board of directors recognized that the entire amounts—$53,601 in 1936 and $58,673.43 in 1937—belonged to the members. The statutes and the bylaws so provide. If any other disposition of such earnings had been made—other than putting them in permanent surplus—the directors would have committed an unlawful act, which under the statutes of Minnesota would have been "cause for the cancellation of the charter." The amounts in question were not put in permanent surplus. They were allocated to the members, though held in reserve. Moreover, though perhaps wholly unnecessarily, the directors sought and secured the approval of the member-

ship at the annual meetings of their action in withholding the portion of the earnings which had been set aside for them, and, in connection with the earnings for 1937, such approval was also secured during the month of December and before the end of the taxable year of the action then contemplated—i. e., that 50 percent be paid in cash at once and 50 percent be placed to the credit of the members and be held in reserve.

Respondent places considerable reliance upon the new bylaw adopted at the annual meeting in 1938 which, he says, indicates that petitioner was under no definite liability to pay the amounts credited upon its books to its members unless it should choose to do so. He relies particularly upon the last sentence of the bylaw, which provides that "in case of liquidation, winding up or dissolution, such certificates shall be paid only after all corporate liabilities (including the liabilities arising from the issuance of preferred stock but excluding its liability arising from the issuance of common stock) have been paid in full." This, he says, indicates that unless some definite corporate action is taken prior to the liquidation or dissolution of petitioner, the members will receive the credits which have been made to their respective accounts only in the event all corporate liabilities shall have been paid and all preferred stock redeemed.

Petitioner, in its reply brief, argues that the new bylaw is immaterial to the present issue and that no corporate action taken during a succeeding year can add to, or detract from, the rights and obligations of the petitioner and its members which had come into being by virtue of corporate action previously taken. There is considerable substance to petitioner's argument. We are of the opinion, however, that if the bylaw is to be considered, still it does not have the effect that respondent contends it has. It recognizes that the amounts set aside and credited to the members belong to them, that interest must henceforth be paid, and, in the event of liquidation or dissolution of the cooperative, that the members shall have the rights of general creditors. No additional action is required to be taken by the corporation to create such liability.

It is apparent we are of the opinion respondent erred in holding that the amounts credited to the members must be included in petitioner's income. One additional reason for so holding may be given. Petitioner's books were kept upon an accrual, as distinguished from a cash, basis. All events occurred within the taxable years determining the liability of petitioner to its members and the amounts thereof. *United States* v. *Anderson*, 269 U. S. 422. The fact that the entries could not be made upon petitioner's books until its audit of the year's business was completed is unimportant and does not deprive it of its right to accrue all proper items in closing its books

for the year. It accrued upon its books, and showed as accounts payable upon its balance sheet, the amounts credited to its members. This action was in accordance with the corporate resolutions adopted by it in December of each year. The amounts so credited, in our opinion, could have been withdrawn by the members at any time. In at least two instances they were, in effect, withdrawn. As shown in our findings, they were applied by petitioner in liquidation of the members' accounts.

Respondent cites an unpublished memorandum opinion of this Board holding that amounts set aside in an account entitled "Reserve for Working Capital" by a cooperative association organized under the laws of Idaho are not deductible as patronage dividends. The cited decision has now been affirmed by the Circuit Court of Appeals for the Ninth Circuit. *Cooperative Oil Association, Inc.* v. *Commissioner*, 115 Fed. (2d) 666. An examination of the opinion of the court discloses that the taxpayer, as provided in its bylaws, had set aside a substantial portion of its earnings "to create a reserve or reserve funds necessary to provide working capital." In the letter to its members it stated that "as rapidly as our reserves accumulate these earnings will be released and disbursed to you as patronage dividends." The reserve established by the taxpayer in the cited case was similar to the "permanent surplus" set aside by petitioner in the instant proceeding rather than to the amounts set aside by it in the patrons' equity reserve account and credited to its members. Additional corporate action was required before it was available to them. This fact distinguishes the cited case from the present.

We are of the opinion and hold that respondent erred in including the amounts in issue in petitioner's income.

Petitioner claims an overpayment for each of the years based upon its present assertion that it should be allowed a credit of $18,017.33 for the year 1936 and $28,051.41 for the year 1937 under section 26 (c) (1) of the Revenue Act of 1936. The petition alleges that these amounts equal the excess of the adjusted net income over the aggregate of the amounts which petitioner could distribute within the taxable years as dividends (for purposes of the surtax on undistributed profits imposed by section 14 of that act) without violating state statutes and the provision of a written contract executed prior to May 1, 1936.

The returns were not introduced in evidence. The deficiency notice indicates that the credits now sought were not claimed in the returns. The basis upon which they are claimed is that under the laws of Minnesota petitioner was prohibited from paying dividends in excess of 6 percent per annum and under its charter it was prohibited from paying dividends in excess of 5 percent per annum.

Since the filing of briefs the Supreme Court has settled the question now before us. It held that the section relied upon by petitioner "referred to routine contracts dealing with ordinary debts and not to statutory obligations", and that the mere fact that a corporation was prohibited by state law or charter provisions from distributing a portion of its earnings did not entitle it to the credit specified in section 26 (c). *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46; *Crane-Johnson Co. of North Dakota* v. *Helvering*, 311 U. S. 54.

While the cited cases completely dispose of petitioner's contention that it is entitled to the credit specified in section 26 (c), there are other equally sound reasons why it can not be allowed. The statute merely limits the amount of *interest* which may be paid upon the paid-up capital. Such interest, for some purposes, is, no doubt, a dividend; but it is questionable, to say the least, whether a statutory provision making specific reference to "interest" could be construed to include "dividends." It is also not inappropriate to point out that petitioner's contention that the "net income" of a corporation is being "distributed", if sustained, would deprive it of the deduction of the amounts paid to its members or allocated to them upon its books; for such deductions may be allowed only upon the theory that the distributions were rebates upon the business of the members rather than income of the association.

Petitioner's claim for the credit is denied. No overpayment in tax has been established.

Other adjustments made by the respondent and not contested by petitioner are approved.

*Decision will be entered under Rule 50.*