McLean County Service Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Champaign County Service Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 101830, 101831. Promulgated December 16, 1941.

*C. C. Chapelle, Esq.,* for petitioners.
*Gerald W. Brooks, Esq.,* for respondent.

1006

OPINION.

ARNOLD: Petitioners contend that, under section 26 (c) (1) of the Revenue Act of 1936, in computing the surtax on undistributed profits they are entitled to a credit to the extent of their respective net incomes upon the ground that the payment of dividends is prohibited by their charters, bylaws, and class A preferred stock, and common stock certificates, except dividends not in excess of 7 percent on class A preferred stock.

To be entitled to the claimed credit the petitioner must show the existence of "a written contract executed by the corporation prior to May 1, 1936" containing a provision which "expressly deals with the payment of dividends."

It has been held that corporate charters and bylaws are not "written contracts executed by the corporation" within the meaning of the statute. *Lehigh Structural Steel Co.*, 44 B. T. A. 422 (on appeal, C. C. A., 3d Cir.); *Metal Specialty Co.*, 43 B. T. A. 891 (on appeal, C. C. A., 6th Cir.); *Warren Telephone Co.*, 43 B. T. A. 451 (on appeal, C. C. A., 6th Cir.); *Midland Cooperative Wholesale*, 44

B. T. A. 824; *Atlas Supply Co.*, 43 B. T. A. 324 (on appeal, C. C. A., 10th Cir.), and *Davison-Joseph Campau Realty Co.*, 41 B. T. A. 675. Section 26 (c) (1) refers to "routine contracts dealing with ordinary debts." *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46.

Whether the stock certificates are contracts within the meaning of section 26 (c) (1) was decided in the negative in *Bishop & Babcock Manufacturing Co.*, 45 B. T. A. 776. Stock certificates are not "routine contracts dealing with ordinary debts." *Helvering* v. *Northwest Steel Rolling Mills, supra.* The petitioners are therefore not entitled to a credit under section 26 (c) (1), Revenue Act of 1936.

Petitioners contend that if it is held the charter, bylaws, and stock certificates do not constitute a contract restricting the payment of dividends as contemplated in section 26 (c) (1), Revenue Act of 1936, then the excess of the amount of patronage dividends accrued over the amount allowable as a deduction from gross receipts should be allowed as a dividends paid credit under section 27 of the Revenue Act of 1936.

Section 27 (g) provides that:

No dividends paid credit shall be allowed with respect to any distribution unless the distribution is pro rata, equal in amount, and with no preference to any share of stock as compared with other shares of the same class.[1]

Each of the petitioners distributed nonpreferential pro rata dividends on shares of class A preferred stock in the amount of $3,604.75 and $2,801.32, respectively, which were allowed as dividends paid credits by respondent. Under the charter and bylaw provisions the holders of common stock of petitioners are entitled to a distribution of income on the basis of patronage only, which distributions are designated patronage dividends as distinguished from ordinary dividends on stock. The McLean Co. accrued patronage dividends of $88,263.93 for the fiscal year on its books, but actually distributed only $85,724.18. The Champaign Co. accrued patronage dividends of $58,340.35 on its books for the taxable year. The amount of patronage dividends paid by it during the taxable year was not stipulated. The respondent allowed as deductions from gross income patronage dividends in the amounts of $80,835.69 and $56,335.68, respectively. It was stipulated that the patronage refunds represented the common stockholders' share of the net savings prorated solely on the basis of their patronage and not in proportion to stockholdings. Holders of one share of common stock who transacted no business

---

[1] SEC. 1001. DEFINITIONS.

(a) When used in this Act—

\* \* \* \* \* \* \*

(8) The term "stock" includes the shares in an association, joint stock company, or insurance company.

\* \* \* \* \* \* \*

with petitioners would be entitled to no dividends, whereas holders of one or more shares of common stock who transacted business with petitioners would be entitled to dividends in varying amounts, depending upon the amount of business transacted. A holder of two or three shares who did not transact business would not be entitled to any dividends, whereas the holders of only one share each who did transact business would be entitled to dividends, depending upon the amount of business transacted. Hence such distribution would not be pro rata equal in amount and with no preference to any share of stock as compared with other shares of the same class.

The language and meaning of section 27 (g) is clear. It is not ambiguous. There is no need for construction of a statute where no ambiguity exists. *Osaka Shosen Kaisha Line* v. *United States*, 300 U. S. 98, 101; *Wilbur* v. *United States ex rel. Vindicator Consolidated Gold Mining Co.*, 284 U. S. 231; *United States* v. *Missouri Pacific R. Co.*, 278 U. S. 269, 278. The petitioners are not cooperatives exempt from Federal income taxes under section 101 of the Revenue Act of 1936. *Council Bluffs Grape Growers Association*, 44 B. T. A. 152; *Farmers Union Cooperative Co., Guide Rock, Nebraska*, 33 B. T. A. 225; affd., 90 Fed. (2d) 488. However, the respondent has allowed each petitioner the deduction of a substantial amount of so-called patronage dividends "to the end that substantial justice may be done to an association which is engaged in the cooperative marketing or purchasing work which may not be exempt from taxation." *Fruit Growers Supply Co.*, 21 B. T. A. 315, 326; affd., 56 Fed. (2d) 90. The allowance of the deduction rests upon the theory that the so-called patronage dividends are "in reality rebates upon the business transacted by the association with its members rather than true income of the association." *Midland Cooperative Wholesale*, 44 B. T. A. 824. See *Cooperative Oil Association, Inc.* v. *Commissioner*, 115 Fed. (2d) 666. Where a cooperative deals with nonmembers who are not entitled to any rebates upon the business transacted, the earnings from such business is taxable gain. *Central Co-Operative Oil Association*, 32 B. T. A. 359. To that extent the business of each petitioner was not upon a cooperative basis, but upon the same basis as that of any other organization engaged in business for profit.

It can not be denied that Congress favors *true* cooperatives by exempting them from Federal income tax. We are not permitted on that account to extend such exemption by allowing a dividends paid credit to cooperatives not exempt from Federal income tax merely because they transact business partly on a cooperative basis. See *Taft* v. *Commissioner*, 304 U. S. 351. To allow a dividends paid credit to cooperatives which are not exempt from tax under section 101 and which distribute taxable income on a patronage basis would in effect

grant them exemption from taxation and violate the clear provisions of section 27 (g). We can see no injustice or unfairness in treating a cooperative not exempt from tax the same as other business organizations. What was stated in *United States* v. *Ewing*, 184 U. S. 140, 149, wherein it was claimed that great injustice would result in many cases if the clear directions of the law involved were required to be followed, is apposite here. The Court stated:

* * * although the result may be to withhold the benefits from some who might be regarded as otherwise entitled to it, yet we can not for that reason alter its terms so as to include them, and thus ourselves enact instead of construing [*sic*] the law.

Furthermore, section 27 (g) provides that "the dividends paid credit shall be the amount of dividends *paid* during the taxable year." (Emphasis supplied.) The amount of patronage dividends paid in the taxable year by the Champaign Co. was not stipulated. It was stipulated that the McLean Co. actually paid patronage dividends in the amount of $85,724.18 in the taxable year. It was also stipulated that at the beginning of the year the balance sheet of the McLean Co. showed patronage refunds payable at the beginning of the taxable year in the amount of $83,519.65 and that during the taxable year patronage dividends were accrued in the amount of $88,263.93. The stipulation, however, fails to disclose whether the payment in the taxable year was applied against the patronage dividends accrued in the taxable year or against patronage dividends accrued in prior years and unpaid at the beginning of the taxable year as reflected in the amount of $83,519.65 standing in the patronage refunds payable account at the beginning of the taxable year. In other words, the amount of $85,724.18 paid during the taxable year may have been, and probably was, first applied against the balance of patronage dividends remaining unpaid at the beginning of the taxable year of $83,519.65, leaving the amount of only $2,204.53 to apply on the patronage dividends accrued during the taxable year. If that be so, the McLean Co. did not pay any patronage dividends declared in the taxable year in excess of the amount of $80,835.81 allowed as a deduction by the respondent. This is also true with respect to the Champaign Co. Patronage dividends, if any, paid by it during the taxable year may have been applied against the balance of patronage dividends accrued on the books prior to the taxable years and unpaid at the beginning of the taxable year in the amount of $50,930.26. The claim is made that petitioners are entitled to a dividends paid credit of the excess of the amount of patronage dividends accrued in the taxable year over the amount allowed by the respondent. There is not sufficient evidence which would support a finding that such excess was actually paid or allocated and credited to the members'

accounts without restriction as to withdrawal. See *John Gerber Co.*, 44 B. T. A. 26. We therefore hold that the petitioners are not entitled to a dividends paid credit as claimed.

The petitioners contend that Federal income taxes paid during the taxable year are not deductible from apparent net income before applying the percentage of member sales to total sales thereto to determine the amount of patronage dividends. This question was before the Board in *Farmers Union Cooperative Exchange*, 42 B. T. A. 1200 (appeal dismissed by Tenth Circuit, 122 Fed. (2d) 718), wherein it was held that in computing the amount of patronage dividends under A. R. R. 6967, C. B. III-1, p. 287, the "apparent net income" referred to therein is the net income accruing upon the business for the year, without reduction on account of Federal taxes and penalties paid. This decision is controlling herein. *Valparaiso Grain & Lumber Co.*, 44 B. T. A. 125, cited by respondent, is not applicable or in conflict with *Farmers Union Cooperative Exchange, supra*. Therein the question involved here was not raised. The taxpayer therein contended that in computing the amount of patronage dividends allowable as a deduction the fixed dividends paid on capital stock were to be considered as having been paid out of profits realized on business done with nonmembers, leaving profits realized on business done with members available for distribution as patronage dividends.

*Decision will be entered under Rule 50.*