RECLAIMED ISLAND LANDS CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 104438. Promulgated May 5, 1942.

*W. G. Harmon, Esq.*, for the petitioner.
*Harry R. Horrow, Esq.*, for the respondent.

1050

## OPINION.

KERN: Petitioner contends that by virtue of the several contracts executed by it prior to May 1, 1936, which are described in our findings, it is entitled to the benefit of section 26 (c) (1) and (2)[1] of the Revenue Act of 1936 in the computation of its surtax on undistributed income for that year. Thus there are raised several issues with regard to the application of each of these subsections to each of the various contracts involved. Since we are of the opinion that

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

*       *       *       *       *       *       *

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision, and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936

the contract between petitioner and A. O. Stewart dated January 1, 1936, entitles petitioner to the benefit of section 26 (c) (1), it is unnecessary to consider the contentions advanced by the parties with regard to the other contracts or section 26 (c) (2).

The pertinent parts of this contract are as follows:

WHEREAS, the said Second Party is willing to guarantee said note and said bonds as required by the said American Trust Company, so as to enable the First Party to receive the deductions and concessions above referred to, upon condition that the First Party hereto shall use all of its net proceeds from whatever source received to retire first its indebtedness to the American Trust Company, and, second, to retire the bonds of Reclamation District 2062, which are a lien against the lands of said First Party within the borders of said district; and that it pay no dividends whatsoever to its stockholders until the indebtedness to said American Trust Company is paid and said bonds have either been purchased from said American Trust Company or retired in such a manner as to save said Second Party harmless; and

\*  .  \*  \*  \*  \*  \*  \*

Now, THEREFORE, in consideration of the premises and of the execution by the Party of the Second Part hereto of the aforesaid agreement, to be dated January 1, 1936, as a party thereto, and in consideration of his continuing as an endorser on said note and guaranteeing the same and the payments agreed to be made thereon, and guaranteeing repayment of the bonds aforesaid, the Party of the First Part has, and by these presents does, covenant and agree with the Party of the Second Part that it will apply all of the net proceeds of its operations and investments of every nature and kind received by or accruing to it from any and every source whatever and from date hereof, to the payment of that certain note hereinbefore described to the American Trust Company, together with the interest thereon and to the retirement of the deed of trust securing the same, and to the payment and retirement of the bonded indebtedness of Reclamation District 2062.

Said Party of the First Part does further covenant and agree that it will pay no money out whatsoever as dividends to its stockholders until the indebtedness above described shall have been retired in full and the Second Party released from all further liability in connection with said indebtedness and said bonds. And the said First Party does further covenant and agree to save the Second Party entirely harmless by reason of said endorsement and guaranty provided for as aforesaid.

It is respondent's contention, first, that the covenanting clause of the contract did not prohibit the petitioner from paying dividends other than cash dividends. In construing a contract it is the intention of the parties which is of paramount importance, and in ascertaining that intention it is proper to consider the contract as a whole. *Meridian & Thirteenth Realty Co.*, 44 B. T. A. 865. When the entire contract is read, and considered in the light of the purpose intended to be achieved by the parties, the prior engagement of the petitioner, as shown by the deed of trust dated January 1, 1933, and the fact that no dividend of any kind was paid by petitioner in the taxable year, it is evident that the parties intended an absolute prohibition against the payment of dividends by petitioner so long as Stewart

was liable as guarantor of its note and the reclamation district bonds which were a first lien upon petitioner's assets. This prohibition was insisted upon by Stewart before he assumed the contingent personal liability as such guarantor, and the obvious purpose of his insistence was to prevent petitioner from making any distribution which would affect its financial condition or weaken its ability to fulfill the primary obligation on its part to the trust company upon which he had assumed a secondary liability. Such an intent or purpose would have been frustrated by permitting the petitioner to make dividend distributions in the medium of notes or bonds or distributions in kind. Respondent admits that petitioner could not have distributed a taxable stock dividend during the year 1936. We conclude that any other form of dividend was also intended by the parties to the contract of January 1, 1936, (petitioner and Stewart) to be prohibited and was prohibited thereby during the taxable year.

In the second place, respondent contends that the agreement in question did not constitute a written contract within the meaning of section 26 (c) (1) in that A. O. Stewart was not a creditor of petitioner and only contracts executed directly between a corporation and its creditor in respect to an indebtedness owed by the corporation to such creditor will entitle the corporation to a credit under this section. As authority for this proposition respondent relies upon certain language used by the court in *Helvering* v. *Northwest Steel Rolling Mills*, 311 U. S. 46, and in our own opinions in *Thibaut & Walker Co.*, 42 B. T. A. 29; *Henry Mill & Timber Co.*, 43 B. T. A. 1073; *Metal Specialty Co.*, 43 B. T. A. 891; and *Lehigh Structural Steel Co.*, 44 B. T. A. 422, reversed 127 Fed. (2d) 67. Respondent calls particular attention to the use of the phrase "routine contracts dealing with ordinary debts" in that paragraph of the Court's opinion in the *Northwest Steel Rolling Mills* case, which is as follows:

That the language used in section 26 (c) (1) does not authorize a credit for statutorily prohibited dividends is further supported by a consideration of section 26 (c) (2). By this section, a credit is allowed to corporations contractually obligated to set earnings aside for the payment of debts. That this section referred to routine contracts dealing with ordinary debts and not to statutory obligations is obvious—yet the words used to indicate that the section had reference only to a "written contract executed by the corporation" are identical with those used in section 26 (c) (1). There is no reason to believe that Congress intended that a broader meaning be attached to these words as used in section 26 (c) (1) than attached to them under the necessary limitations of 26 (c) (2).

Respondent urges that the language used in these cases makes clear "that a provision restricting the payment of dividends must be contained in a contract entered into by a corporation with its creditor in respect of its indebtedness to said creditor, in order to permit allowance of credit under section 26 (c) (1)." Respondent's regulations

(Art. 26-2 (b), Regulations 94) provide that this credit "is allowable only with respect to a written contract executed by the corporation prior to May 1, 1936, which expressly deals with the payment of dividends and operates as a legal restriction upon the corporation as to the amounts which it can distribute within the taxable year as dividends." The argument here advanced by respondent would, in effect, change his own regulation by adding another condition to the allowance of this credit, so that the regulation would read that the credit "is allowable only with respect to a written contract executed by the corporation with its creditor or creditors  *  *  *."

With this contention as applied to the facts of the instant case, we can not agree. The phrase "routine contracts dealing with ordinary debts" used by the Supreme Court in the *Northwest Steel Rolling Mills* case was used by it in antithesis to the words "statutory obligations" and therefore the "statutory obligations" were what the Court had in mind as the opposite of "routine contracts dealing with ordinary debts," or as unusual contracts not dealing with ordinary debts. In the instant proceeding the debt of petitioner to the trust company is an ordinary debt and this is true of the obligation under the reclamation district bonds, even if this obligation is one *in rem*. It is also true that a contract which has as its purpose the safeguarding of a guarantor of an obligation is not an unusual contract and by reason of its subject matter necessarily deals with the debt guaranteed. Neither of these propositions is questioned by respondent, who is merely insisting that because the contract is made by the corporation with the guarantor instead of with the creditor it does not fulfill the requirements of the statute. We can find no justification for this contention in the statute, in respondent's own regulations, or in the decided cases, and, therefore, conclude that a written contract executed by and between a corporation and the guarantor of its debts and obligations prohibiting the payment of dividends by the corporation during the existence of the guarantor's secondary liability on such debts and obligations, is such a contract as to entitle the corporation to credit under section 26 (c) (1) of the Revenue Act of 1936.

Respondent's third contention was made in connection with the contention which we have just considered. It may be paraphrased as follows: Petitioner was the principal stockholder of petitioner and exercised a controlling influence on its affairs; at any time he could have relieved the petitioner of any restriction on the distribution of dividends; and, therefore, the restriction on the distribution of dividends by petitioner must be considered as self-imposed and as similar to "intramural," "unilateral" "agreements of the stockholders *inter sese*" "which the corporation, through its stockholders, could  *  *  *  revoke" within the meaning of *Thibaut & Walker*

*Co., supra; Henry Mill & Timber Co., supra; Metal Specialty Co., supra;* and *Lehigh Structural Steel Co., supra.*

We can not agree with this argument. While Stewart dominated the affairs of petitioner during the taxable year, his domination arose by reason of personal ability and the confidence of the other stockholders, and not by reason of his ownership of the majority of petitioner's stock. If, for any reason, difficulties arose between him and his son-in-law and daughter, his domination of the petitioner would be at an end. As the guarantor of petitioner's obligations, he was interested in providing for the payment of these obligations at the earliest moment. While he was motivated to become guarantor by reason of being the principal stockholder of petitioner, he was motivated to exact the contract from petitioner prohibiting it from paying dividends by reason of his undertaking to act as guarantor, and for the purpose of protecting himself as such guarantor. Therefore, the contract dated January 1, 1936, was executed by the corporation with Stewart *qua* guarantor and not *qua* stockholder. As guarantor his interests were no longer identical to those of the corporation and the other stockholders. Having insisted upon the execution of this contract and being a minority stockholder, there was little likelihood that Stewart would relieve petitioner of any restrictions on the distribution of its earnings. If he did waive the restrictions of the contract, it would, of course, follow that the petitioner would lose any credit by virtue of the contract. *Coca Cola Bottling Co., Inc., of Blytheville, Arkansas,* 44 B. T. A. 1110.

We conclude that a written contract executed prior to May 1, 1936, by and between a corporation and the guarantor of the obligations of the corporation, prohibiting the payment of dividends by the corporation so long as the obligations are unsatisfied, is a contract which will permit a credit under section 26 (c) (1), even though the guarantor is a stockholder of the corporation.

*Decision will be entered for the petitioner.*