## SUPPLEE–BIDDLE HARDWARE CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8451.

Circuit Court of Appeals, Third Circuit.
Argued Jan. 17, 1944.
Decided Aug. 25, 1944.

James F. McMullan and Frederic L. Clark, both of Philadelphia, Pa. (Shields, Clark, Brown & McCown, of Philadelphia, Pa., on the brief), for petitioner.

Maryhelen Wigle, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before JONES and McLAUGHLIN, Circuit Judges, and KALODNER, District Judge.

JONES, Circuit Judge.

Supplee-Biddle Hardware Co. petitions for review of a decision of the Tax Court of the United States which sustained a deficiency determination by the Commissioner of Internal Revenue with respect to the taxpayer's liability for income and excess profits taxes for the fiscal year ended June 30, 1937, and for income taxes for the fiscal year ended June 30, 1938.

The questions involved are (1) whether, in computing the surtax on its undistributed profits for the years in question, the taxpayer is entitled to a credit under Sec. 26 (c) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 836, because of a contract restriction upon the taxpayer's payment of dividends and (2) if not, whether, for the purpose of computing the taxpayer's dividends paid credit under Sec. 27(a) (e) of the Act, the taxpayer failed to sustain its burden of proving incorrect the Commissioner's determination of the fair market value of a stock dividend which the taxpayer distributed in 1937.

The taxpayer is a Pennsylvania corporation. By an amendment of its charter, which was duly approved by the Secretary of the Commonwealth of Pennsylvania on December 18, 1933, the Company was authorized to, and thereafter in due course did,

issue 1,000 shares of First Preferred stock, $100 par value, 5,000 shares of Preference stock, no par value, and 14,000 shares of common stock, no par value. The charter, as so amended, provided that the First Preferred shares should be entitled to cumulative dividends, payable out of the net earnings or surplus profits of the Company, to the extent of 7% annually on the par value of the stock; that no dividends should be paid on the Preference shares or common shares at any time until all accumulated and unpaid dividends on the First Preferred had been paid or funds had been set aside in amount sufficient for their payment; that, after dividends in full had been paid upon or set aside for the First Preferred stock, but before any dividends were paid upon or set aside for the common stock, the holders of the Preference shares were entitled to receive cumulative dividends at the rate of $7 per share only after January 1, 1935, or from the first day of the quarterly dividend period within which such shares were issued if issued after January 1, 1935; that no dividends were to be paid upon the Preference shares unless the Company's net earnings for the fiscal year preceding the declaration and payment of such dividends equaled or exceeded ten times the amount required for dividend purposes on the outstanding First Preferred shares; and that no dividends were to be paid upon the common stock unless the company's net earnings for the fiscal year preceding the declaration and payment of such dividends equaled or exceeded fifteen times the amount required for the dividend on the outstanding First Preferred shares.

The Company's charter was further amended on January 11, 1937, with the due approval of the Secretary of the Commonwealth of Pennsylvania. The latter amendment authorized the Company to reduce its annual dividend rate on its First Preferred shares from 7% to 5% and the annual dividend rate on the Preference shares from $7 to $5 per share. The requirement as to the net earnings of the Company in the fiscal year preceding the declaration and payment of dividends on the Preference shares was modified so that thereafter dividends upon the Preference shares might be declared and paid if the earnings of the Company in the preceding year equaled or exceeded five times the amount required for the payment of dividends on the First Preferred shares; and the requirement that the amount needed for the payment of dividends on the First

Preferred shares should be earned at least fifteen times over during the fiscal year preceding that in which dividends were declared and paid on the common shares was modified so that thereafter dividends could be declared and paid on the common shares if twice the amount required for the payment of dividends on the Preference shares had been earned in the preceding fiscal year.

Pursuant to the authority contained in its charter as amended on January 11, 1937, the Company thereafter issued new stock certificates for each of its three classes of stock. The new certificates, upon each of which was endorsed the modified restrictive provisions as to dividends, were exchanged for the old certificates share for share for each respective class of stock.

Dividends on the petitioner's old 7% cumulative First Preferred shares and its new 5% First Preferred shares were declared and paid in full from the time of the first issuance of the old shares in 1934. No dividends were paid on the Preference shares until February 11, 1937, when, pursuant to a resolution by the Company's board of directors, approved by all classes of stockholders, a stock dividend on its old Preference shares was paid in new Preference shares at the rate of fourteen-one hundredths of a share of the latter stock for each share of the former Preference stock outstanding as of January 1, 1937. The stock dividend amounted to 558.6 shares of the new Preference stock which had a stated value of $100 per share or an aggregate stated value of $55,860 for the total stock dividend.

In its tax return for the fiscal year ended June 30, 1937, the taxpayer claimed a dividends paid credit of $65,432.50 consisting of $9,572.50 for dividends paid in cash on the First Preferred shares and $55,860 as the market value of the dividend paid in stock on the Preference shares. The Commissioner determined that a dividends paid credit of only $15,856.75 was allowable consisting of the cash dividend of $9,572.50 and $6,284.25 as representing the stock dividend of 558.6 Preference shares which the Commissioner found to have a fair market value of $11.25 per share. On its tax return for the fiscal year ended June 30, 1938, the taxpayer was allowed a dividends paid credit of $5,427.50 for cash dividends actually paid in that year. At the same time, the Commissioner denied the taxpayer's claim to credits under Sec. 26(c) (1), which relieves a corporation from tax on undistrib-

uted earnings or profits which it could not distribute as dividends "without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends."

On petition of the taxpayer for a redetermination of its tax liability for the years in question, the Tax Court sustained the Commissioner's action. In denying the taxpayer's claim to credits under Sec. 26 (c) (1), the Tax Court held that a stock certificate is not a contract within the intent of the relevant statutory provision.[1] This court had ruled directly to the opposite effect in Lehigh Structural Steel Co. v. Commissioner, 3 Cir., 127 F.2d 67, and, since then, has approved and followed the ruling of that case several times. See Eljer Co. v. Commissioner, 3 Cir., 134 F.2d 251, and Budd International Corporation v. Commissioner, 3 Cir., 143 F.2d 784. While the Commissioner in his brief frankly states his disagreement with our decision in the Lehigh Structural Steel Co. case, the facts of the instant case present no occasion for the application or reconsideration of the ruling in that case.

▉ The stock certificates, containing the restrictions on dividends upon which the taxpayer relies in support of its claim to credit against undistributed earnings under Sec. 26(c) (1), were not executed until January 11, 1937, or thereafter. As the statutory provision requires for its fulfillment a contract "executed by the corporation prior to May 1, 1936", it is apparent that the taxpayer failed to prove its execution of the required contract prior to the date specified in the statute.

The taxpayer argues, however, that the restrictions on the payment of dividends were already contained in the stock certificates which it had issued in 1934 under its charter powers, as amended on December 18, 1933, and that all that the charter amendment of January 11, 1937, did was to authorize a modification of the restrictive provisions concerning the payment of dividends so as to make them a little less restrictive. The fact is that the corporate power to impose the dividend restrictions with respect to the 1937 issue of new stock in exchange for the Company's outstanding stock did not come into being until the amendment of the Company's charter on January 11, 1937. In that situation, we are unable to see how the exercise of the charter power can be said to relate back to a time antecedent to the creation of the power. The fact that the restrictive provisions in the stock certificates issued in 1934, if left unaltered, would have afforded the taxpayer a basis for claiming credits under Sec. 26(c) (1) on the authority of our decision in the Lehigh Structural Steel Co. case furnishes no justification for saying that the stock certificates issued by the taxpayer in 1937, under a charter power created on January 11, 1937, constituted contracts executed by the Company prior to May 1, 1936.

We come then to the taxpayer's contention that the Commissioner erred in his determination as to the fair market value of the stock dividend distributed by the Company in 1937. In part here material Sec. 27(e) of the Revenue Act of 1936 provides that: "In case of a stock dividend or stock right which is a taxable dividend in the hands of shareholders under section 115 (f), the dividends paid credit with respect thereto shall be the fair market value of the stock or the stock right at the time of the payment."

▉ The ascertainment of the "fair market value" of the stock involved a pure question of fact, the determination whereof by the Tax Court is binding upon us on review if there is substantial evidence in

---

[1] In so ruling the Tax Court expressly relied upon its prior decisions in Lehigh Structural Steel Company v. Commissioner, 44 B.T.A. 422; Budd Wheel Company v. Commissioner, 45 B.T.A. 963; Bishop & Babcock Manufacturing Company v. Commissioner, 45 B.T.A. 776, affirmed, 6 Cir., 131 F.2d 222, reversed upon rehearing on another point, 6 Cir., 133 F.2d 199; and McLean County Service Company v. Commissioner, 45 B.T.A. 1004. The Tax Court found further confirmation for its action in the decisions in Warren Tel. Co. v. Commissioner, 6 Cir., 128 F.2d 503, certiorari denied 317 U.S. 697, 63 S.Ct. 440, 87 L.Ed. 557; Metal Specialty Co. v. Commissioner, 6 Cir., 128 F.2d 259; Bishop & Babcock Manufacturing Co. v. Commissioner, supra; Elliott Addressing Mach. Co. v. Commissioner, 1 Cir., 131 F.2d 700; and Central West Coal Co. v. Commissioner, 7 Cir., 132 F.2d 190. The Tax Court also cited Commissioner v. Columbia River Paper Mills, 9 Cir., 127 F.2d 558; Davison-Joseph Campau Realty Company v. Commissioner, 41 B.T.A. 675; Thibaut & Walker Co. v. Commissioner, 42 B.T.A. 29; Atlas Supply Company v. Commissioner, 43 B.T.A. 324; and Helms Bakeries v. Commissioner, 46 B.T.A. 308.

the record to support that Court's findings. Elmhurst Cemetery Company v. Commissioner, 300 U.S. 37, 40, 57 S.Ct. 324, 81 L. Ed. 491. Furthermore, it is incumbent upon a reviewing court to recognize that the cogency or unimportance of particular facts or their implications are peculiarly matters for the Tax Court's appraisal. As was pointed out in Dobson v. Commissioner, 320 U.S. 489, 501, 64 S.Ct. 239, 246: "* * * 'the judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.' Rochester Telephone Corporation v. United States, 307 U.S. 125, 146, 59 S.Ct. 754, 764, 83 L.Ed. 1147 [and other cited cases]."

No useful purpose would be served by restating the evidence, which the Tax Court had before it, of the market value of the stock as indicated by contemporaneous sales or in pointing out the deficiencies in the proofs offered by the taxpayer in an effort to establish that the book value of the stock was commensurate with its stated value of $100 per share. The opinion of the Tax Court amply justifies its appraisal and treatment of the evidence and its conclusion as to the fair market value of the stock. It is sufficient to say that the record plainly discloses a rational basis for the Tax Court's conclusion that the evidence offered by the taxpayer was insufficient to warrant its disturbing the Commissioner's determination that the Preference stock had a fair market value of $11.25 per share at the time of the payment of the stock dividend.

The decision of the Tax Court is affirmed.