*Decision will be entered under Rule 50.*

AIRTHERM MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100808. Promulgated February 28, 1941.

*Joseph H. Deeken, Esq.*, for the petitioner.
*Carroll Walker, Esq.*, for the respondent.

#### OPINION.

KERN: This proceeding involves income tax liability for the fiscal year ended March 31, 1937. The Commissioner determined a deficiency of $259.66, and in this proceeding petitioner alleges error in such determination to the extent of $215.66. The sole question now presented is whether any written contract entered into and executed by the petitioner restricted the payment of dividends during the taxable year. Subsequent to the filing of the petition respondent conceded that petitioner is entitled to accrue for the fiscal year ended March 31, 1937, a sum of $130 as a capital stock tax, and, consequently, this item is no longer in issue.

The facts in the instant proceeding have been stipulated *in toto* and, as stipulated, are adopted by us as our findings herein. A short statement of the material facts necessary to an understanding of the issue presented is as follows:

The Airtherm Manufacturing Co., petitioner, was incorporated under the laws of the State of Missouri on April 21, 1936, as the result of a written agreement entered into between A. W. D. Weis, the principal creditor of the Old Airtherm Co., and the Machinery & Welder Corporation, hereinafter sometimes referred to as the party of the

first part. This agreement, entered into March 25, 1936, contained *inter alia*, the following clauses:

If the old Airtherm Co. accepts the Machinery & Welder Corporation's offer to purchase its property, then it is agreed between the parties as follows:

1. The party of the first part agrees to cause to be incorporated under the laws of the State of Missouri a new corporation to be known as the Airtherm Manufacturing Co. [this petitioner] to which corporation the aforementioned assets will be conveyed.

2. Party of the first part further agrees that it will cause to be issued to Weis, party of the second part, preferred stock of the par value of $100 to the amount of $22,500, 5% cumulative preferred, in the new corporation, which will entitle Weis to receive a cumulative dividend in each year at the rate of 5% per annum, payable out of net earnings of the company before any dividends shall be declared or paid on the common stock.

3. Weis agrees to waive all dividends and cumulations on his preferred stock for a period of the first three years from the date of issuance of the preferred stock.

That agreement was specifically contingent upon the party of the first part being able to work out a satisfactory agreement with the owner of the premises in which the property was then situated for a renewal of the lease thereon, and the working out of satisfactory agreements with the key operating men then employed by the old Airtherm Co.

The new and present Airtherm Manufacturing Co. was incorporated on April 21, 1936, and two days later, in accordance with the terms of the aforementioned agreement, issued to Weis $22,500 of the $100 par value preferred stock.

Upon the face of the preferred stock certificates was the following clause:

The owners of the Preferred Stock are entitled to receive and the company is bound to pay out of its surplus or net earnings a dividend at the rate of, but never exceeding five percent per annum, cumulative beginning with the year commencing May 1, 1939, payable annually, before any dividend shall be set apart or paid on the Common Stock.

The total authorized capital stock of the corporation was 500 shares of common and 300 shares of preferred. In the absence of any proof to the contrary, we must assume that some or all of the authorized common stock was issued by petitioner.

The amount of undistributed net profits for the fiscal year ended March 31, 1937, as stated in the deficiency notice, was $2,876.54. Petitioner has not contested the authenticity of this figure, and, consequently, we adopt it as the true amount.

The preferred stock certificate does not constitute a contract expressly restricting the payment of dividends on common stock in the fiscal year ended March 31, 1937.

Petitioner in this proceeding relies upon section 26 (c) (1) of the Revenue Act of 1936 [1] in support of its contention that the Commissioner erred in assessing a tax against its undistributed net income. The express wording of this section should be closely observed, for, when claiming credits, exemptions, and deductions, the taxpayer must come within the letter of the law. Cf. *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46. It is significant that section 26 (c) (1) deals only with contracts "executed by the corporation prior to May 1, 1936", containing a provision which "expressly deals with the payment of dividends." It is not clear whether petitioner claims that the contract between A. W. D. Weis and the Machinery & Welder Corporation is such a contract. Obviously it could not be, for at the time the parties entered into that contract the petitioner corporation was not yet in existence. Petitioner never entered into that contract nor did it ever take part in its execution. Hence, it is clear that the contract is not of the type mentioned in the section set forth above.

The only other contract in evidence is a copy of a certificate for shares of preferred stock. The petitioner was a party to the issuance of these certificates, and, consequently, if there is any express provision contained therein restricting the payment of dividends during the taxable year, it would appear to be such a contract as is provided for in section 26. As indicated above, the only clause in that contract which deals with payment of dividends is the following:

The owners of the Preferred Stock are entitled to receive and the company is bound to pay out of its surplus or net earnings a dividend at the rate of, but never exceeding five per cent. per annum, cumulative beginning with year commencing May 1, 1939, payable annually, before any dividend shall be set apart or paid on the Common Stock.

Can this clause be said to be a restriction on the payment of dividends in the years prior to May 1, 1939? That is the sole remaining question. The taxpayer contends that no dividends on preferred stock were payable under the provisions of the preferred stock certificates until after May 1, 1939, and that, therefore, the payment of a dividend on common stock prior to May 1, 1939, would be in violation of the

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amount which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.

terms of the preferred stock certificates, which constituted a written contract entered into by petitioner. The respondent, on the other hand, contends that the provision in the preferred stock certificate does not prohibit the payment of dividends on the common stock in the taxable year. Respondent's interpretation is that the certificate provides that the dividends on the preferred stock shall be payable and cumulative only after May 1, 1939, and only after that date is there a prohibition against the payment of dividends on common stock until dividends on the preferred stock are paid. We agree with the respondent's interpretation. Even if we read the material provisions of the March contract in connection with the preferred stock certificate, we can not arrive at any other conclusion. The fact that Weis waived the right to dividends on the preferred stock for a period of three years does not mean, in and of itself, that the common stockholders are thereby expressly denied the privilege of receiving dividends for a corresponding period of time.

Petitioner has failed to show us any contract recognized within the terms of section 26, *supra*, such as would entitle it to the credit claimed.

Reviewed by the Board.

*Decision will be entered under Rule 50.*