TRIANON HOTEL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 95972. Promulgated July 22, 1941.

1074

*Alton Gumbiner, Esq.*, for the petitioner.
*A. R. Shannon, Esq.*, for the respondent.

1076

OPINION.

Mellott: The pertinent provisions of the Revenue Act of 1936 are shown in the margin.[1]

Petitioner's first contention is that it was restricted in the payment of dividends in the taxable year by the provisions of a written contract executed by it prior to May 1, 1936, which required it to set aside $20,000 out of net earnings in 1936 for the purpose of discharging its covenant to satisfy the Muehlebach creditors' claims. It claims that it is therefore entitled to the credit provided by section 26 (c) (1), *supra*.

The evidence presented by petitioner indicates that it did enter into a written contract prior to May 1, 1936, under the terms of which, after January 1, 1935, it was required to "set aside out of its net earnings, if any, the sum of Ten Thousand ($10,000.00) Dollars per year each year for the purpose of retiring issued and outstanding Preferred Stock until all of the issued and outstanding Preferred Stock shall have been retired; and after January 1, 1935, no dividends shall be declared or paid during any year on the Common Stock until the sum of Ten Thousand ($10,000.00) Dollars for such particular year shall have been first set aside for the purpose of retiring the Preferred Stock as above stated." The quoted provision was contained in the preferred stock certificates issued by petitioner in 1932.

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

\* \* \* \* \* \* \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

(3) DOUBLE CREDIT NOT ALLOWED.—If both paragraph (1) and paragraph (2) apply, the one of such paragraphs which allows the greater credit shall be applied; and, if the credit allowable under each paragraph is the same, only one of such paragraphs shall be applied.

SEC. 27. CORPORATION CREDIT FOR DIVIDENDS PAID.

\* \* \* \* \* \* \*

(f) DISTRIBUTION IN LIQUIDATION.—In the case of amounts distributed in liquidation the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall, for the purposes of computing the dividends paid credit under this section, be treated as a taxable dividend paid.

It is axiomatic that provisions in preferred stock certificates constitute a binding contract between the issuing company and the purchaser of the stock. Respondent contends, however, that, despite the provision set out above, petitioner is not entitled to any credit under section 26 (c) (1), *supra.* He points out that this section allows credit in an "amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by a corporation prior to May 1, 1936," and takes the position that such "aggregate" consisted of petitioner's surplus and undivided profits of $105,699.66, on hand at the beginning of the taxable year, plus its adjusted net income for that year of $167,623.45, and minus the $10,000 which it was required to set aside out of its net earnings. This amount is $263,323.11, which is in excess of petitioner's adjusted net income of $167,623.45. Respondent therefore contends that petitioner is not entitled to any credit under section 26 (c) (1), *supra.*

Petitioner urges that its earnings and profits of $105,699.66 accumulated prior to January 1, 1936, could not be distributed within the taxable year since they were needed to pay the current expenses of the hotel and to pay for necessary repairs and replacements, and, therefore, should not be included in the computation of "the aggregate of the amounts which can be distributed within the taxable year as dividends * * *." One witness for petitioner testified that the current and necessary expenses of the hotel amounted to approximately $90,000 a month; that petitioner was required to keep this amount of cash on hand to meet these expenses; that at the beginning of the taxable year 1936 petitioner had current liabilities in excess of $81,000, of which between $50,000 and $60,000 was due within 30 days; that large amounts had to be expended for equipment and leasehold improvements; and that petitioner expended for such improvements $32,000 in 1932, $22,000 in 1933, $94,000 in 1934, $28,000 in 1935, and $64,000 in 1936. The testimony of this witness does not convince us that the surplus on hand at the beginning of 1936 was needed for the payment of current expenses or necessary capital improvements, and that it was not available for distribution as dividends. In its income tax return for 1936 petitioner reported gross receipts of $1,364,945.92 and cost of operations $325,868.69. Thus it had a gross income of $1,041,232.23. It claimed deductions of $846,174.81 for compensation of officers, rent, interest, and insurance, depreciation, salaries, and other expenses, leaving a net income of $195,057.42. Its balance sheet showed $97,910.21 cash on hand at the beginning of the year and $117,723.91 at the end of the year, and capital assets of $381,410.93 at the beginning of the year and $438,-

297.40 at the end of the year. Despite the distribution of dividends in the amount of $112,156.17 and the retirement of $26,620.83 of its preferred stock, the surplus of petitioner was increased from $105,-699.66 at the beginning of the year to $156,763.83 at the end of the year. From this evidence it is apparent that petitioner's income for 1936 was more than sufficient to take care of its current expenses and capital improvements, and that it was not necessary to call upon the accumulated earnings of prior years for such purposes.

Petitioner's contention that the surplus on hand at the beginning of 1936 was not available for distribution as dividends during that year is further disproved by the action taken at the regular monthly meeting of its board of directors held on July 28, 1936. At that meeting, after referring to the prior declaration of a 7 percent dividend on preferred stock made on December 31, 1935, for the period February 1, 1932, to February 1, 1933, a declaration of a 7 percent dividend made April 28, 1936, for the period February 1, 1933, to February 1, 1934, and a declaration of a 7 percent dividend made May 27, 1936, for the period February 1, 1934, to February 1, 1935, the following resolutions were adopted:

BE IT FURTHER RESOLVED: That there be at once appropriated, *out of the surplus of this Corporation,* the sum of $16,065.29 to pay as of the date hereof, the seven percent annual dividend on the outstanding Preferred Stock of this Corporation provided by this Company's charter, and allocable to the period from February 1, 1935, to February 1, 1936, and

BE IT FURTHER RESOLVED: That the said dividends be, and they hereby are, ordered and directed *to be paid forthwith out of said surplus and earnings of this Corporation,* to the preferred stockholders of this corporation of record as of this date. [Italics supplied.]

While we have answered petitioner's contention that its accumulated earnings as of January 1, 1936, should not be included in computing the aggregate amount available for distribution as dividends in that year because they were needed for current expenses, etc., we desire to point out that there is, in our opinion, considerable substance to the respondent's contention on brief that, even if petitioner had proved that the accumulated earnings were needed for the specified purposes, the act did not provide for any exception in such cases and they would have to be included in the aggregate which could be distributed as dividends during the taxable year.

Petitioner also strenuously urges that even if its surplus as of January 1, 1936, be considered a "free surplus", it may not be used to lessen the amount of credit to which petitioner is entitled under section 26 (c) (1); that the statute is leveled at undistributed current earnings, and not at undistributed surplus of earlier years on hand at the beginning of the current year; that the purpose of the act is to impose a surtax on the current net income of a corporation in

an amount measured by the undistributed net income; that to the extent the current net income is undistributed it is taxable, except in the amount that it can not be distributed by virtue of contractual prohibitions resulting from contracts entered into prior to the date the statute became effective; and that Congress intended to allow a credit to the extent that the current net income exceeds that part of the current net income which can be distributed without offending a contract restricting dividends.

Section 14 of the Revenue Act of 1936 provides for the imposition of a surtax upon the undistributed net income of every corporation, and subdivision (a) (2) of this section defines "undistributed net income" to be "the adjusted net income minus the sum of the dividends paid credit provided in section 27 and the credit provided in section 26 (c), relating to contracts restricting dividends." An examination of the sections discloses that the credits are not limited to current net income. Section 27 allows a credit for dividends paid, either out of earnings of prior years or out of the earnings of the current year. It also allows, under certain circumstances, as a part of the dividends paid credit, dividends paid in a preceding year in excess of the adjusted net income for that year. The purpose of section 26 (c) (1), as we interpret it, was to allow a taxpayer an additional credit where a corporation was prevented from distributing an amount equivalent to its adjusted net income of the current year by reason of a written contract executed prior to May 1, 1936, expressly dealing with the payment of dividends. Congress apparently realized that there would be instances, such as we have here, where, even though a corporation was required by the provisions of a written contract to set aside a portion of its earnings for a particular purpose, it might still be in a position, after it had discharged this contractual obligation, to distribute an amount equivalent to its adjusted net income. It, therefore, provided for a credit equal to the excess of the adjusted net income over the aggregate of the amounts which could be distributed within the taxable year as dividends without violating a written contract, etc. The aggregate amount which petitioner could distribute during the taxable year included its surplus as of January 1, 1936, and its adjusted net income of the current year, less the amount it was obligated by contract to set aside out of 1936 earnings, and which it did so set aside, for the retirement of its preferred stock. Since the aggregate of these amounts is in excess of its adjusted net income for 1936, we hold that it is not entitled to the claimed credit under section 26 (c) (1), *supra*.

Petitioner contends in the alternative that it is entitled to a credit under the provisions of section 26 (c) (2), *supra*. Before petitioner can be allowed such a credit, it must appear that a portion of its

earnings and profits of the taxable year is required by the provisions of a written contract executed prior to May 1, 1936, expressly dealing with the disposition of earnings and profits, to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within such year for the discharge of a debt.

It has been pointed out in connection with the first issue that petitioner was obligated by a provision in its preferred stock certificates to set aside, after January, 1935, out of its net earnings, if any, the sum of $10,000 per year each year, for the purpose of retiring issued and outstanding preferred stock. This provision expressly dealt with the disposition of a portion of petitioner's earnings and profits of the taxable year, and was contained in a contract executed by petitioner prior to May 1, 1936. If, therefore, petitioner was required to set aside $10,000 per year each year "for the discharge of a debt", it is entitled to a credit under section 26 (c) (2).

Petitioner takes the position that its agreement to set aside $10,000 per year out of its net earnings for the purpose of retiring issued and outstanding preferred stock should be construed to be a contract requiring it to set aside a portion of its net earnings for the discharge of a debt. It urges that its preferred stock certificates were in reality certificates of indebtedness and that the general rule that the holders of preferred stock of a corporation are not creditors should not therefore be applied. It is true, as petitioner points out, that the corporate designation of the character of the instrument is not conclusive. *Commissioner* v. *Proctor Shop, Inc.*, 82 Fed. (2d) 792; *Commissioner* v. *Palmer-Stacy-Merrill, Inc.*, 111 Fed. (2d) 809. Each case must be decided upon its own facts. *Dayton & Michigan Railroad Co.*, 40 B. T. A. 857; affd., 112 Fed. (2d) 627. The evidence in the instant proceeding does not convince us that the certificates of preferred stock issued by this petitioner were other than what they purport to be. Petitioner relies strongly upon the testimony of former creditors of the Whitmore Hotel Co. to the effect that they understood petitioner's preferred stock was being given to them as evidence of the unliquidated balance of the debts owed to them; that they did not consider the preferred stock as an investment; and that they did not desire to become investors in a hotel property. It argues that this testimony shows that the intention of the creditors was not to embark upon the corporate venture and take the risks of loss attendant thereon in order to enjoy the chances of profit, and that it was the intent of petitioner to acquire the assets of an embarrassed hotel by paying off its creditors, half in cash and half in deferred payments. As proof that a debt was recognized as such by petitioner, it introduced in evidence a page from a combination journal and ledger book, known as a "voucher register," showing that in September 1936 $22,616.76 was credited to preferred stockholders as an

account payable. It also points out that the holders of its preferred stock had no voting power and were not entitled to notice of stockholders' meetings.

The evidence convinces us that it was the intention of petitioner from the very beginning to acquire the accounts of creditors of the Whitmore Hotel Co. in exchange for cash and preferred stock. The purpose of acquiring these accounts in this manner was to permit petitioner to begin its operation of the hotel "free of all current liabilities." The contract under which it acquired the assets of the hotel specifically provided that petitioner did not assume or agree to pay any of the obligations of the Whitmore Hotel Co., except that it agreed to acquire by assignment all the accounts payable of that company. When the accounts were assigned to petitioner, it issued shares of its preferred stock in part payment therefor. The preferred stock certificates gave the holders the right to receive, out of surplus or net earnings of the corporation, a yearly cumulative dividend of 7 percent per annum; the right to have $10,000 per year set aside out of the net earnings of the corporation after January 1, 1935, for the purpose of retiring preferred stock; and the right to receive upon dissolution or liquidation, the full par value of the stock and all unpaid dividends accrued thereon before any payment to the common stockholders. These provisions, including the provision that the holders of the preferred stock should have no voting power, differ in no material respect from those usually contained in preferred stock issues.

While the corporate designation of the character of an instrument such as the preferred stock certificates issued by petitioner is not conclusive, the name given will not be ignored and courts will not lightly assume that the corporation has given the instrument an incorrect name. *Greensboro News Co.*, 31 B. T. A. 812. The provisions of the certificates are an important factor in determining whether the holders thereof should be treated for tax purposes as preferred stockholders or creditors. A corporate creditor has been defined by this Board to be "one who has loaned to the corporation money or its equivalent, usually for compensation or interest, at a fixed rate, to be repaid at a designated time or in a designated manner." *Elko Lamoille Power Co.*, 21 B. T. A. 291; affd., 50 Fed. (2d) 595. In *Richmond, Fredericksburg & Potomac Railroad Co.*, 33 B. T. A. 895; affd., 90 Fed. (2d) 971, in determining that fixed periodic payments made to holders of "guaranteed stock" were in reality interest although denominated "dividends", we said: "It seems to us * * * that in this case the basic test to be applied is whether the stockholder invested his money with the view of receiving a return from its use dependent on the successful operation of the company, on the one hand, or, on the other hand, whether he invested with no regard

to the profit or loss which the company might enjoy or sustain, but with a dependency on the regular payment of compensation for the use of the money and the assurance of its ultimate payment." If the intention of the petitioner were to treat the holders of its preferred stock as creditors, we are at a loss to account for the absence of any provision fixing a definite time when the debt would mature and requiring payment to be made whether earnings existed or not. Cf. *Meridian & Thirteenth Realty Co.*, 44 B. T. A. 865. Dividends were not payable to the holders of such stock in any event, but only when and if declared by petitioner's board of directors. Moreover, the rights of the preferred stockholders to dividends and to have their stock redeemed depended upon earnings derived from the successful operation of the hotel. They were given preference only over common stockholders in the event of dissolution or liquidation.

The provisions of the stock certificates are not the only evidence that a debtor-creditor relationship did not exist between petitioner and its preferred stockholders. Petitioner's articles of incorporation provided that its capital stock should consist of 10,000 shares of common stock having a par value of $5 per share and 10,000 shares of preferred stock having a par value of $25 per share, and contained the statement that more than 17 percent of the authorized capital stock (3,746 shares of common and 1,342 shares of preferred) had been actually paid up in cash. In the minutes of the meetings of its stockholders and directors the preferred stock was always referred to as such and not as a certificate of indebtedness. In its capital stock tax return for 1936, it reported that its outstanding capital stock consisted of 9,180⅙ shares of preferred stock and 9,330⅔ shares of common stock. Approximately 4,300 shares of its outstanding preferred stock were not issued in connection with the acquisition of the accounts of Whitmore Hotel Co. creditors. In the balance sheet forming part of its income and excess profits tax return for 1936, it listed as a capital stock liability "Preferred Stock (less stock in treasury)" amounting to $229,504.17 at the beginning and $202,883.34 at the end of the year. In the same return it claimed $112,156.17 as a "Dividends paid credit", $65,502.84 of which represented distributions to the holders of its preferred stock, and in computing its net taxable income no deduction was claimed for "Interest paid" during the year.

The provisions of petitioner's preferred stock certificates, petitioner's consistent treatment of these certificates as preferred stock, its repeated reference to "dividends" to be paid or paid to the holders thereof in the minutes of its corporate meetings and tax returns, its action in setting aside $20,000 out of its surplus funds and earnings for the purpose of retiring issued and outstanding preferred stock, and other evidence heretofore mentioned, all serve to convince us that peti-

tioner did not set aside $20,000 during the taxable year for the discharge of a debt. In reaching this conclusion we do not doubt the sincerity of those former creditors of the Whitmore Hotel Co. who testified that they did not intend to become investors and accepted petitioner's preferred stock as evidence of the unliquidated balance of the debts owed to them. Whatever their intention may have been, they became investors when they assigned their Whitmore Hotel Co. accounts to petitioner in exchange for cash and preferred stock. Respondent did not err in disallowing the credit claimed by petitioner under the provisions of section 26 (c) (2), *supra*. Cf. *May Hosiery Mills, Inc.*, 42 B. T. A. 646.

The remaining contention of petitioner is that if it is not entitled to a credit under section 26 (c), then it is entitled to an additional dividends paid credit under section 27 (f) of the Revenue Act of 1936 for the $26,620.33 (should be $26,620.83) which it paid during the taxable year in retirement of its preferred stock.

Section 27 (f) of the 1936 Act provides that in the case of amounts distributed in liquidation the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall , for the purposes of computing the dividends paid credit under this section, be treated as a taxable dividend paid. Section 115 (c) of the same act provides that in case of a distribution in partial liquidation the part of such distribution "which is properly chargeable to capital account shall not be considered a distribution of earnings or profits." In *Credit Alliance Corporation*, 42 B. T. A. 1020, this Board discussed at length the provisions of section 27 (f), *supra*, and among other things said: "It seems * * * plain that Congress did not intend to confer dividends paid credit for a return of capital. * * * Indeed, Regulations 94, article 27 (f)–1 (*b*) states: 'To determine the amount properly chargeable to the earnings or profits accumulated since February 28, 1913, there must be deducted from the amount of the distribution that part allocable to capital account.' "

The amount of $26,620.83 which petitioner paid during 1936 in retirement of a part of its preferred stock was not properly chargeable to its earnings or profits accumulated after February 28, 1913. The entire amount distributed, representing the par value of 1,064⅚ shares retired, was chargeable to its capital account, and as a result of this distribution petitioner's preferred stock liability on the balance sheets forming part of its 1936 return was reduced from $229,504.17 at the beginning of the year to $202,883.34 at the end of the year. Under these circumstances, petitioner is not entitled to an additional dividends paid credit because of the provisions of section 27 (f).

*Decision will be entered for the respondent.*