THE BISHOP AND BABCOCK MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101587.   Promulgated November 21, 1941.

*Robert W. Wheeler, Esq.,* for the petitioner.
*Stanley B. Pierson, Esq.,* for the respondent.

OPINION.

TURNER: Petitioner contends that the stock certificates issued to its stockholders constitute written contracts executed by the corporation within the meaning of section 26 (c) (1) of the Revenue Act of 1936,[1] that under the provisions of said contracts it could pay dividends on its prior preference and preferred stock only from "surplus or net profits" and could not pay dividends on its common stock if it was in arrears in paying accumulated dividends on its prior preference and preferred stock, that at all times during 1937 it was in arrears in paying accumulated dividends on its prior preference and preferred stock, that at no time during 1937 did it have any "surplus or net profits" but on the contrary had a huge profit and loss deficit, and for that reason it could not distribute during the year 1937 any sum as a dividend without violating the provisions of a written contract, and it is accordingly entitled to the credit provided for in the act. On brief the respondent contends that the provisions contained in petitioner's stock certificates were obviously meant to conform to the usual requirements of state law respecting the payment of dividends by deficit corporations, but he argues that, even if it be assumed that the stock certificates constituted a contract between petitioner and its stockholders, "it is not the contract required under section 26 (c) (1) to obtain the benefit of the credit." On this latter point his argument is that the contract must be one executed by the corporation with a creditor, rather than mere stockholders.

We think this question has already been decided by the Supreme Court adversely to the petitioner's contentions. In *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46, the Supreme Court,

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

   *   *   *   *   *   *

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.

in holding that the taxpayer was not entitled to the credit claimed under section 26 (c) (1), *supra*, had the following to say with respect to the proper interpretation of that provision:

That the language used in section 26 (c) (1) does not authorize a credit for statutorily prohibited dividends is further supported by a consideration of section 26 (c) (2). By this section, a credit is allowed to corporations contractually obligated to set earnings aside for the payment of debts. That this section referred to routine contracts dealing with ordinary debts and not to statutory obligations is obvious—yet the words used to indicate that the section had reference only to a "written contract executed by the corporation" are identical with those used in section 26 (c) (1). There is no reason to believe that Congress intended that a broader meaning be attached to these words as used in section 26 (c) (1) than attached to them under the necessary limitations of 26 (c) (2).

In a footnote to that case the Supreme Court stated:

(17) Respondent contended that the stock certificates satisfied the statutory requisites even if the charter did not; but what we have here said with respect to the charter applies equally to the certificates.

We followed that decision in *Lehigh Structural Steel Co.*, 44 B. T. A. 422. There the petitioner's amended charter provided for a sinking fund for the retirement of preferred stock, whereby a percentage of net earnings of the taxable year after payment of preferred dividends was to be set aside before any other dividends could be paid. The charter provision was set out in preferred stock certificates. In holding that petitioner was not entitled to the credit claimed under section 26 (c) (1), *supra*, we said that the charter provision was not a contract within the meaning of the act, and further that "It derives no greater strength from the fact that it is spread upon the share certificate, for this is but a reprint of the charter provision." In *Thibaut & Walker Co.*, 42 B. T. A. 29, we said that the legislative history of section 26 (c) (1), *supra*, "indicates that Congress was trying to relieve situations in which a corporation had contracted with creditors to retain its earnings for their protection, but did not have in mind contracts such as this one, entered into by parties inside the corporate group to refrain from declaring dividends for their own mutual benefit." Cf. *Atlas Supply Co.*, 43 B. T. A. 324 and *Trianon Hotel Co.*, 44 B. T. A. 1073.

Petitioner relies on several rulings of the respondent which seem to support its contention, I. T. 3139, Cumulative Bulletin 1937–2, p. 111, and I. T. 3152, Cumulative Bulletin 1938–1, p. 155, and on *Airtherm Manufacturing Co.*, 43 B. T. A. 736, and *Holden & Reaume, Inc.*, decided under authority of *Airtherm Manufacturing Co.* by memorandum opinion. In *Airtherm Manufacturing Co.*, *supra*, the petitioner issued preferred stock certificates in 1936 which contained a provision that dividends on preferred stock would be cumulative, beginning with the

year commencing May 1, 1939, and paid annually, before any dividend would be set apart or paid on the common stock. In the course of our opinion and with respect to the preferred stock certificates, we said: "The petitioner was a party to the issuance of these certificates, and, consequently, if there is any express provision contained therein restricting the payment of dividends during the taxable year, it would appear to be such a contract as is provided for in section 26." We then pointed out, however, that the restriction stated in the stock certificate did not become operative until May 1, 1939, and held that there was no restriction on the payment of dividends on the common stock in the taxable year ended March 31, 1937. In addition to being dicta in *Airtherm Manufacturing Co., supra,* the above quoted statement is contrary to the conclusions reached in the cases previously cited and the holding here and should not be regarded as controlling.

The stock certificates issued by petitioner do not constitute contracts within the meaning of section 26 (c) (1), *supra,* and the respondent's disallowance of the credit is sustained. *Northwest Steel Rolling Mills, Inc., supra.*

Reviewed by the Board.

*Decision will be entered under Rule 50.*

ARUNDELL dissents.