Farmers Union Co-operative Elevator Association v. Commissioner.
Farmers Union Coop. Elevator Ass'n v. Commissioner
Docket No. 133.
United States Tax Court
1945 Tax Ct. Memo LEXIS 206; 4 T.C.M. (CCH) 490; T.C.M. (RIA) 45157; May 4, 1945
Robert A. Nelson, Esq., for the petitioner. Loyal E. Keir, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in the petitioner's income and excess profits taxes and penalties as follows: Declared Value
Income
25 Percent
Excess
25 Percent
Excess
25 Percent
Year
Tax
Penalty
Profits Tax
Penalty
Profits Tax
Penalty
1939
$ 19.56
$ 21.35
1940
946.33
465.99
1941
1,822.33
$455.58
918.51
$229.63
$181.97
$45.49
*207 Issues presented by the pleadings are the correctness of the respondent's action (1) in disallowing petitioner's claim for exemption from tax under section 101 (12) of the Internal Revenue Code for the years 1939 through 1941; (2) in disallowing as deductions the amounts of $7,123.50 and $8,473.78 taken by petitioner in 1940 and 1941 as patronage dividends; and (3) in determining that petitioner was liable for 25 percent delinquency penalties for 1941. At the hearing the petitioner conceded issue (1) and the correctness of the respondent's determination with respect to 1939. Findings of Fact The petitioner is a Nebraska corporation, organized under the cooperative laws of that state, with its principal office at Grand Island. It filed its income tax returns for 1939, 1940 and 1941 with the Collector for the District of Nebraska. The petitioner operates a grain elevator and feed mill, and handles certain farm supplies. In July 1941. the petitioner filed with the respondent an application for exemption under section 101 (12) of the Internal Revenue Code. On March 11, 1942, the respondent informed the petitioner that the application *208 had been denied. On August 18, 1942, the petitioner filed its income and declared value excess profits tax return for 1941, but filed no other excess profits tax return. According to its articles of incorporation, the petitioner was organized for the purpose of buying, selling, storing, shipping and handling grain, grain products and other foodstuff, lumber, coal, cement, farm machinery and supplies; for the purpose of buying and shipping livestock; and of buying, leasing and operating mills, elevators, warehouses and stores, and other buildings and real estate required in those operations. Its authorized capital is $60,000, divided into 6,000 shares having a par value of $10 per share. A minimum of $20,000 was required for starting the business, and it is provided that no debts may be contracted in excess of two thirds of the paid-up capital stock. Only members of the Farms Educational and Cooperative Union of America may become members of the petitioner. The use, disposition and distribution of the earnings are governed by the provisions of Article IX, reading as follows: "Article IX DISTRIBUTION OF EARNINGS "SECTION 1. Interest on the paid up share capital of this association *209 may be declared at a rate not to exceed eight per cent (8%) when earned. Of the remaining earnings, over and above all expenses and interest on shares, not less than five per cent (5%) shall be set aside to a surplus fund each year until such fund equals at least twenty per cent (20%) of the paid up share capital. This fund may be used for conducting the business. "SECTION 2. After making the distribution provided for in Section 1 of this article, the board of directors may set aside such other sums as they deem necessary for reserves, improvements or for educational work; the remaining net earnings shall be prorated to shareholders and other patrons of the association in proportion to the amount of business furnished to the association by each. "SECTION 3. The By-Laws of this association shall give a detailed statement of the method to be followed in distributing earnings." The by-laws provide that no person, co-operative association or Farmers Union local may hold more than 100 shares of stock. Regardless of the number of shares owned, however, no stockholder is entitled to more than one vote. The directors are authorized to call in the stock owned by a shareholder who ceases *210 to patronize the association or who becomes ineligible to hold stock. In case they do call such stock, they are to tender to such shareholder the par value of the stock, or the actual value of the stock if the actual value happens to be lower. The management of the petitioner is in a board of seven directors. The provisions relating to the distribution of earnings are contained in Article VII of the by-laws, which reads as follows: ARTICLE VII. DISTRIBUTION OF EARNINGS "Sec. 1. Dividends or interest on the share capital of this association may be declared, when earned, at a rate not to exceed eight percent (8%) per annum on shares issued and fully paid. Such dividends shall be non-cumulative. Provided, however, that the board of directors shall not be obliged to pay dividends or interest on share capital unless such disbursement is warranted by the financial condition of the association. "Sec. 2. This association shall set aside each year to a surplus fund not less than five per cent (5%) of the earnings or savings of the association over and above all expenses and dividends or interest on share capital until such fund equals at least twenty per cent (20%) of the paid-up share *211 capital. This surplus fund may be used by the association for conducting the business of the association. "Sec. 3. The board of directors may set aside from time to time such sums as in their judgment they shall deem necessary or desirable for reserves, improvements, extension of the business, or for educational work. "Sec. 4. The net earnings or savings of this association after making the distributions and appropriations provided for in Sections 1, 2, and 3 of this Article shall be distributed as patronage dividends on the basis of, or in proportion to, the amount or value of commodities bought from or sold to, or services performed for, shareholders of the association and other patrons. Patronage dividends may be declared at different rates upon different classes or kinds or varieties of goods or commodities handled or services performed in proportion to the net earnings or savings on each, Provided: "(a) That shareholders shall not receive patronage dividends unless they are members in good standing of the Farmers Educational and Co-operative Union. "(b) That the patronage dividends of nonshareholder patrons shall not be paid in cash or commodities, but shall be credited *212 to them on the books of the association. When the credit of any such patron who is eligible to become a shareholder in this association equals or exceeds the par value of a share, the borad of directors shall issue to such patron a share in the association if such patron is then a member of the Farmers Educational and Co-Operative Union. "(c) That patrons not eligible to membership in the Farmers Educational and Co-Operative Union may receive the same patronage dividends as shareholders on payment to the association each year of a sum equal to the annual dues required of members of the Farmers Educational and Co-Operative Union of Nebraska in organized counties. Funds accumulated from such payments by non-shareholders shall be used for educational work." In Article XI of the by-laws, it is declared that it shall be the policy of the petitioner to keep its shares in the hands of active patrons, and to that end the board of directors are instructed to use the powers provided in the articles of incorporation to take up the shares of inactive and ineligible shareholders. In the first part of January 1941 and January 1942, the petitioner had audits made of its operations for 1940 *213 and 1941, to ascertain its net earnings for those years. Shortly after the completion of the audits, meetings of the petitioner's board of directors were held. At a meeting held on January 15, 1941, the directors adopted a resolution providing that out of the 1940 net earnings 2 percent interest be paid on petitioner's capital shares, that 5 percent of the remaining net earnings be set aside for a surplus fund, and that the balance of the net earnings be set up as a deferred patronage dividend, to be paid as provided by the by-laws, with the time for such payment to be left to the discretion of petitioner's board of directors. A similar resolution was adopted by petitioner's board of directors on January 20, 1942, with respect to its net earnings for 1941. Upon adoption of the above resolutions the petitioner paid the 2 percent interest on its outstanding capital shares, but it did not set up on its books 5 percent of the remaining net earnings as a surplus fund, as authorized for 1940 and 1941. The petitioner maintained a separate ledger account for each patron during 1940 and 1941, showing the amount of business transacted with such patron in each year, but did not, during those *214 years, credit any patronage dividends to any of the accounts. Upon adoption by the directors of the above resolutions, the petitioner's manager was instructed to set up patronage dividend ledgers for 1940 and 1941, showing the amount of the patronage dividend to which each patron was entitled for each year. The work was started immediately but, due to lack of help and changes of employees, was not completed until the fall of 1942. Upon completion of the work, and during the fall of 1942, the manager made undated entries in the ledger accounts of the patrons, crediting as patronage dividends 1.4 percent of the amount of business each had transacted with petitioner during 1940, and 1.6 percent of the amount of business each had transacted with petitioner during 1941. The percentages for the said years were computed by ascertaining the ratio of the petitioner's total business to its net profits, after deducting 2 percent interest on capital stock and 5 percent of the remaining net earnings for a surplus fund. Credits made in this manner totaled $5,032.95 for 1940, and $6,660.60 for 1941. The total business (including both purchases and sales) transacted by the petitioner with its patrons *215 (including shareholders and non-shareholders) amounted to $364,465.65 for 1940, and $419,544.74 for 1941. On January 22, 1941, the secretary of the board of directors made a report to the annual meeting of shareholders of the action taken by the board with respect to patronage dividends for 1940, and on January 21, 1942, he made a similar report as to their action with respect to patronage dividends for 1941. No formal notice of such action was given to non-shareholder patrons but petitioner's manager and bookkeeper did tell them of the action taken when they happened to be at the office. In May 1944 the directors authorized payment of $5,032.95, representing the patronage dividends for 1940 provided for in the resolution of January 15, 1941. Payment was made during September and October 1944. Not until immediately prior to actual payment did petitioner notify its patrons of the specific amount each would receive. Due to lack of cash the directors have not authorized payment of the patronage dividends for 1941, provided for in the resolution of January 20, 1942. According to its balance sheet for December 31, 1941, a deficit of $10,069.79 at January 1, 1940, had been reduced by *216 "savings" during the year to a deficit of $3,864.85 at the end of the year. The balance sheet also shows capital stock outstanding in the amount of $35,500. In its income tax return for 1940, which was executed March 12, 1941, the petitioner took a deduction of $7,123.50 as an allowance for patronage dividends and reserves, and in its balance sheet at December 31, 1940, forming part of the return, it showed among other liabilities the item "Allowance for Pat. Div. & reserves, $7,123.50 (less 1939 income tax $918.56)". In its income tax return for 1941 the petitioner took a deduction of $8,473.78 as an allowance for patronage dividends and reserves, and in its balance sheet at December 31, 1941, forming a part of the return, it showed among other liabilities the item "Patronage dividends, $6,204.94". In determining the deficiencies in controversy, the respondent disallowed the above-mentioned deductions of $7,123.50 and $8,473.78 taken by petitioner in 1940 and 1941, respectively. Opinion The petitioner does not now claim the right to deduct or exclude from income the $7,123.50 deducted on its 1940 returns as patronage dividends or the $8,473.78 similarly deducted on its return *217 for 1941. It does claim the right to deduct or exclude from income for those years the amounts of $5,032.95 and $6,660.60, which were the amounts actually credited on its books to its patrons as patronage dividends for 1940 and 1941. The petitioner is entitled to the exclusion from gross income of the amounts claimed only if the right of patrons to such amounts as patronage dividends arises by reason of the corporate charter, by-laws or other contract, and "does not depend upon some corporate action taken subsequent to its receipt of the money later so distributed, such as the action of the corporation's officers or directors." United Cooperatives, Inc., 4 T.C. 93. See also Midland Cooperative Wholesale, 44 B.T.A. 824, and Fruit Growers Supply Co., 21 B.T.A. 315; affd., 56 Fed. (2d) 90. An examination of the facts in the instant case discloses that the petitioner's patrons were not entitled to the payment or distribution of the amounts here under consideration by reason of the petitioner's corporate charter or by-laws or other contract. To the contrary, the right thereto resulted from action by petitioner's directors taken subsequent *218 to the receipt by the petitioner of the funds in question. Under both its articles of incorporation and its by-laws, the petitioner, through its board of directors, was authorized to declare a dividend on its capital stock not in excess of 8 percent; to set aside not less than 5 percent of the earnings remaining after the declaration of the dividend in a surplus fund, until the fund should equal 20 percent of the paid-up capital, the said fund to be used for conducting the business; and to set aside such other sums "as they deem necessary for reserves, improvements or for educational work." The petitioner was required by its articles of incorporation and by-laws to distribute to its patrons only the earnings remaining after the items mentioned had been cared for. The patronage dividends in question were computed after excluding dividends of 2 percent paid on petitioner's capital stock and the 5 percent required to be set aside in a surplus fund, until the fund should equal 20 percent of the paid-up capital stock. No amount was set aside for reserves, improvements or educational work. It is thus apparent that it was within the discretion of the petitioner's board of directors to have *219 absorbed the entire amounts of the patronage dividends here in question, in the payment of an additional 6 percent on its capital stock and in the setting up of further funds for reserves, improvements or educational work. The amounts added to reserves of certain types are, of course, deductible in computing net income, and conceivably, an amount set aside for educational work might have been deductible, but here the types of reserves were not specified and we know of no provision which would permit the deduction of amount set aside for improvements. It follows, therefore, that the patronage dividends here in question do not meet the requirements for their exclusion from gross income. United Cooperatives, Inc., supra. In addition to his determination of deficiencies, the respondent has determined that by reason of the fact that the petitioner did not file its income and declared value excess profits tax return for 1941 until August 18, 1942, some five months after it was due, and has filed no 1941 excess profits tax return at any time, the 25 percent delinquency penalty applies. The evidence fails to show that the delinquency of the petitioner in these matters was *220 due to reasonable cause, and the respondents' determination that the said penalty is applicable is accordingly sustained. Decision will be entered for the respondent.